IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JAMIE WEBB and AARON HODGE, on behalf of themselves and all others similarly situated,

　　　　　　　　Plaintiffs,

v.

DOORDASH, INC.,

　　　　　　　　Defendant.

Case No. 1:19-cv-00665-SCJ

## DECLARATION OF JOSHUA LIPSHUTZ IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL ARBITRATION AND DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

I, Joshua Lipshutz, declare as follows:

1.　　　I am a partner at the law firm of Gibson, Dunn & Crutcher LLP, counsel of record for Defendant DoorDash, Inc. ("DoorDash" or "Defendant") in the above-captioned action.  I offer this declaration in support of DoorDash's Motion to Compel Arbitration and Dismiss Plaintiffs' First Amended Complaint.  I have personal knowledge of the facts set forth in this declaration (unless otherwise noted), and, if called to testify, I could and would competently testify to them.

2.　　　Attached hereto as **Exhibit A** is a true and correct copy of the Orange County Superior Court's March 7, 2019 order in *Farran v. DoorDash, Inc.*, No. 30-2018-00992677-CU-OE-CXC.

3.     Attached hereto as **Exhibit B** is a true and correct copy of the American Arbitration Association Commercial Arbitration Rules.

4.     Attached hereto as **Exhibit C** is a true and correct copy of the San Francisco Superior Court's December 7, 2018 order in *Marciano v. DoorDash, Inc.*, No. CGC-18-567869.

5.     Attached hereto as **Exhibit D** is a true and correct copy of the Los Angeles Superior Court's May 29, 2018 order in *Marko v. DoorDash, Inc.*, No. BC659841.

6.     Attached hereto as **Exhibit E** is a true and correct copy of the Santa Clara Superior Court's March 21, 2016 order in *DoorDash, Inc. v. Marciano*, No. 2015-1-CV-287843.


I declare under penalty of perjury pursuant to the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed at Washington, D.C., on this 7th day of June, 2019.


*/s/ Joshua Lipshutz*
Joshua Lipshutz

# EXHIBIT A

**SUPERIOR COURT OF CALIFORNIA,**
**COUNTY OF ORANGE**
**CIVIL COMPLEX CENTER**

**MINUTE ORDER**

DATE: 03/07/2019                TIME: 02:00:00 PM         DEPT:  CX102

JUDICIAL OFFICER PRESIDING: Peter Wilson
CLERK:  Virginia Harting
REPORTER/ERM: Carolyn Marie Gregor-2351 CSR# 2351
BAILIFF/COURT ATTENDANT:  Nestor Peraza

CASE NO: **30-2018-00992677-CU-OE-CXC** CASE INIT.DATE: 05/11/2018
CASE TITLE: **Suhail Farran vs. Doordash Inc.**
CASE CATEGORY: Civil - Unlimited       CASE TYPE: Other employment

EVENT ID/DOCUMENT ID: 72975996

**EVENT TYPE**: Petition to Compel Arbitration
MOVING PARTY: Doordash Inc.
CAUSAL DOCUMENT/DATE FILED: Motion to Compel Arbitration, 07/02/2018

**APPEARANCES**
Daniel Hyun, from Aegis Law Firm, PC, present for Plaintiff(s).
Joshua Lipshutz and Michael J. Holecek, from Gibson, Dunn & Crutcher LLP, present for Defendant(s).

Tentative Ruling posted on the Internet.

The Court hears oral argument and confirms the tentative ruling as follows:

The motion of Defendant Doordash, Inc. to Compel Arbitration and Stay the Proceedings is GRANTED.

The parties' arbitration agreement is governed by the FAA as it involves interstate commerce. (See *Allied-Bruce Terminix Companies, Inc. v. Dobson* (1995) 513 U.S. 265, 277.) "The United States Supreme Court has broadly interpreted the phrase 'involving commerce' … as the functional equivalent of 'affecting' commerce. [Citations.] The [FAA's] reach is expansive and coincides with that of the commerce clause." (*Scott v. Yoho* (2016) 248 Cal.App.4th 392, 400.) "Congress' Commerce Clause power 'may be exercised in individual cases without showing any specific effect upon interstate commerce' if in the aggregate the economic activity in question would represent 'a general practice ... subject to federal control.' [Citations.] Only that general practice need bear on interstate commerce in a substantial way." (*Citizens Bank v. Alafabco, Inc.* (2003) 539 U.S. 52, 56–57.)

Here, the evidence shows that Defendant operates in 40 states and Canada. Its mobile application is internet based and its transactions involve technological infrastructure located in various states. Defendant advertises to customers on the internet. It also communicates with customers, "Dashers," restaurants, and other businesses in other states by telephone, mail, and email. (Aughney Decl., ¶¶ 4-6.) Defendant has sufficient nexus with interstate commerce to require the Agreement to be enforced under the FAA. (See e.g., *Scott v. Yoho* (2016) 248 Cal.App.4th 392, 401-02.)

The FAA's transportation-worker exemption contained in 9 U.S.C. § 1 does not apply to Plaintiff. The

---

CASE TITLE: Suhail Farran vs. Doordash Inc.          CASE NO: **30-2018-00992677-CU-OE-CXC**

---

inquiry whether an arbitration agreement involves interstate commerce is separate from the inquiry as to whether the Section 1 exemption applies. (*Circuit City Stores, Inc. v. Adams* (2001) 532 U.S. 105, 105-106, 114-19.) The meaning of "in commerce" as used in Section 1 is narrower than Section 2. (*Ibid.*)

"[S]ection 1 of the FAA exempts only the employment contracts of workers actually engaged in the movement of goods in interstate commerce." (*Cole v. Burns Intern. Sec. Services* (D.C. Cir. 1997) 105 F.3d 1465, 1471; see e.g. *Levin v. Caviar, Inc.* (N.D. Cal. 2015) 146 F.Supp.3d 1146, 1152-55 [denying Section 1 exemption where food delivery driver did not make deliveries across state lines].) Section 1 applies to "workers who are actually engaged in the movement of interstate or foreign commerce or in work so closely related thereto as to be in practical effect part of it." (*Tenney Eng'g v. United Elec., Radio & Mach. Workers* (3d Cir. 1953) 207 F.2d 450, 452.) While *New Prime Inc. v. Oliveira* (2019) 139 S.Ct. 532 clarified that the Section 1 exemption can apply to independent contractors, it did not otherwise alter the definition of transportation workers.

Plaintiff has not provided any evidence that his work had any effect on the movement of goods in interstate commerce. To the contrary, he states he was a "local delivery driver" that "used his personal vehicle to deliver food from local California restaurants to local California citizens" and "did not engage in any activity involving interstate commerce." (Plaintiff's Supp. Opp., p. 4:15-19.) Thus, the Section 1 exemption does not apply to him.

As to the arbitrability of his claims, Plaintiff does not contest that his first through seventh causes of action are arbitrable. Nor does he challenge the class action waivers relating to these claims. The Court notes that these waivers are permitted under the FAA. (See *AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. 333, 333-34; *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 359.) Thus, these claims are arbitrable.

As to the eighth cause of action, Plaintiff's argument that his waiver of the UCL claim is unenforceable is for the Court to determine. (Tang Decl., Ex. A, § XI, ¶ 3 ["[A]ny claim that all or part of this Class Action waiver is unenforceable, unconscionable, void or voidable may be determined only by a court of competent jurisdiction and not by an arbitrator."].) "Agreements to arbitrate claims for public injunctive relief under the … the UCL … are not enforceable in California." (*McGill v. Citibank, N.A.* (2017) 2 Cal.5th 945, 956.) However, Plaintiff's cause of action does not seek public injunctive relief. The UCL claim seeks redress for wage and hours violations. This is a private dispute between Plaintiff and Defendant that provides, at best, an incidental benefit to the public. (See *McGill v. Citibank, N.A.* (2017) 2 Cal.5th 945, 955-56.) Thus, Plaintiff's UCL claim is arbitrable.

Defendant has requested a stay pending determination of this petition and a stay pending completion of the arbitration. Thus, this action has been stayed since July 2018, when Defendant filed this petition. (Code. Civ. Proc., § 1284.4; *Twentieth Century Fox Film Corp. v. Superior Court* (2000) 79 Cal.App.4th 188, 192.) The Court's authority during the stay is limited. (See *Titan/Value Equities Group, Inc. v. Superior Court* (1994) 29 Cal.App.4th 482, 487.)

Further, the Court finds lifting the stay to allow Plaintiff leave to amend to add a PAGA claim would cause prejudice to Defendant. (*Melican v. Regents of University of California* (2007) 151 Cal.App.4th 168, 175.) Defendant would lose the benefit of the parties' agreement to arbitrate disputes, such as whether Plaintiff is an independent contractor. (See *AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. 333, 339 [stating the "liberal federal policy favoring arbitration" and that arbitration agreement must be enforced "according to their terms"].)

---

CASE TITLE: Suhail Farran vs. Doordash Inc.          CASE NO: **30-2018-00992677-CU-OE-CXC**

---

Further, allowing Plaintiff leave to amend would have little practical benefit for Plaintiff. As Defendant notes in its reply, at least five PAGA actions predate Plaintiff's proposed PAGA claim. (Lipshutz Decl., Exs. C-G.) Thus, even if Plaintiff added a PAGA claim it would be stayed pending the outcome of the other actions. (See *Alakozai v. Chase Inv. Services Corp.* (C.D. Cal., Mar. 1, 2012) 2012 WL 748584, at *5, aff'd (9th Cir. 2014) 557 Fed.Appx. 658.)

Thus, the Court orders Plaintiff's claims against Defendants to arbitration and continues the stay of this action pending arbitration.

Plaintiff's requests for judicial notice are denied as irrelevant. (*Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison* (1998) 18 Cal.4th 739, 748 fn. 6 [declining to take judicial notice of materials not "necessary, helpful, or relevant"].)

The Court sets an Arbitration Review Hearing for September 6, 2019 at 9:00 AM.

Moving party to give notice.

# EXHIBIT B

# Commercial

## Arbitration Rules and Mediation Procedures

**Including Procedures for Large, Complex Commercial Disputes**



AMERICAN ARBITRATION ASSOCIATION®

Available online at **adr.org/commercial**

Rules Amended and Effective October 1, 2013

## Regional Vice Presidents

**States: Delaware, District of Columbia, Maryland, New Jersey, Pennsylvania, Virginia**
P. Jean Baker, Esq.
Vice President
Phone: 202.223.7093
Email: BakerJ@adr.org

**States: Oklahoma, Texas**
Andrew Barton
Vice President
Phone: 210.998.5750
Email: BartonA@adr.org

**States: Alabama, Georgia**
John M. Bishop
Vice President
Phone: 404.320.5150
Email: BishopJ@adr.org

**States: City of Houston, Louisiana, Mississippi**
Ingeuneal C. Gray, Esq.
Vice President
Phone: 832.308.7893
Email: GrayI@adr.org

**States: Connecticut, Maine, Massachusetts, New Hampshire, Rhode Island, Vermont**
Karen Jalkut
Vice President
Phone: 617.695.6062
Email: JalkutK@adr.org

**States: Alaska, California, Hawaii, Oregon, Washington**
Serena K. Lee, Esq.
Vice President
Phone: 415.671.4053
Email: LeeS@adr.org

**States: Indiana, Kentucky, North Carolina, Ohio, South Carolina, Tennessee, West Virginia**
Michelle M. Skipper
Vice President
Phone: 704.643.8605
Email: SkipperM@adr.org

**States: Florida**
Rebecca Storrow, Ph.D.
Vice President
Phone: 954.372.4341
Email: StorrowR@adr.org

**States: Arizona, Colorado, Kansas, Idaho, Montana, Nebraska, Nevada, New Mexico, Utah, Wyoming**
Lance K. Tanaka
Vice President
Phone: 303.831.0824
Email: TanakaL@adr.org

**States: Arkansas, Illinois, Iowa, Michigan, Minnesota, Missouri, North Dakota, South Dakota, Wisconsin**
A. Kelly Turner, Esq.
Vice President
Phone: 312.361.1116
Email: TurnerK@adr.org

**States: New York**
Jeffrey T. Zaino, Esq.
Vice President
Phone: 212.484.3224
Email: ZainoJ@adr.org

## Case Management Vice Presidents and Assistant Vice President

Jeffrey Garcia
Vice President
Phone: 559.490.1860
Email: GarciaJ@adr.org
**Administers cases in: AK, AZ, CA, CO, HI, ID, MT, NV, NM, OR, UT, WA, WY**

John M. Bishop
Vice President
Phone: 404.320.5150
Email: BishopJ@adr.org
**Administers cases in: AL, DC, FL, GA, IN, KY, MD, NC, OH, SC, TN, VA**

Rod Toben
Vice President
Phone: 972.774.6923
Email: TobenR@adr.org
**Administers Cases in: AR, IL, IA, KS, LA, MN, MS, MO, NE, ND, OK, SD, TX, WI**

Yvonne Baglini
Assistant Vice President
Phone: 866.293.4053
Email: BagliniY@adr.org
**Administers cases in: CT, DE, MA, ME, MI, NH, NJ, NY, PA, RI, VT, WV**

# Table of Contents

Important Notice . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

Standard Arbitration Clause . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

Administrative Fees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

Mediation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

Large, Complex Cases . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

Commercial Arbitration Rules . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

   R-1. Agreement of Parties. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

   R-2. AAA and Delegation of Duties. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

   R-3. National Roster of Arbitrators. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

   R-4. Filing Requirements. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

   R-5. Answers and Counterclaims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

   R-6. Changes of Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

   R-7. Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

   R-8. Interpretation and Application of Rules. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

   R-9. Mediation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

   R-10. Administrative Conference . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

   R-11. Fixing of Locale . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

   R-12. Appointment from National Roster . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

   R-13. Direct Appointment by a Party. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

   R-14. Appointment of Chairperson by Party-Appointed Arbitrators or Parties. . . . . . .16

   R-15. Nationality of Arbitrator . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

   R-16. Number of Arbitrators. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

   R-17. Disclosure . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

   R-18. Disqualification of Arbitrator . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18

   R-19. Communication with Arbitrator . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18

   R-20. Vacancies . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

   R-21. Preliminary Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

   R-22. Pre-Hearing Exchange and Production of Information . . . . . . . . . . . . . . . . . . . .19

   R-23. Enforcement Powers of the Arbitrator. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20

   R-24. Date, Time, and Place of Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20

   R-25. Attendance at Hearings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

   R-26. Representation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

   R-27. Oaths . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

R-28. Stenographic Record. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

R-29. Interpreters. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

R-30. Postponements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

R-31. Arbitration in the Absence of a Party or Representative . . . . . . . . . . . . . . . . . . .22

R-32. Conduct of Proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

R-33. Dispositive Motions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23

R-34. Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23

R-35. Evidence by Written Statements and Post-Hearing Filing of Documents or
Other Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23

R-36. Inspection or Investigation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .24

R-37. Interim Measures . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .24

R-38. Emergency Measures of Protection . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .24

R-39. Closing of Hearing. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .25

R-40. Reopening of Hearing. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .26

R-41. Waiver of Rules. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .26

R-42. Extensions of Time  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .26

R-43. Serving of Notice and Communications . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .26

R-44. Majority Decision . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .27

R-45. Time of Award . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .27

R-46. Form of Award . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .27

R-47. Scope of Award . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .28

R-48. Award Upon Settlement—Consent Award . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .28

R-49. Delivery of Award to Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .28

R-50. Modification of Award . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .28

R-51. Release of Documents for Judicial Proceedings. . . . . . . . . . . . . . . . . . . . . . . . . . .29

R-52. Applications to Court and Exclusion of Liability . . . . . . . . . . . . . . . . . . . . . . . . . .29

R-53. Administrative Fees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .29

R-54. Expenses. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .29

R-55. Neutral Arbitrator's Compensation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .30

R-56. Deposits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .30

R-57. Remedies for Nonpayment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .30

R-58. Sanctions  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .31

Preliminary Hearing Procedures . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

P-1. General . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

P-2. Checklist . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32


Expedited Procedures . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

E-1. Limitation on Extensions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

E-2. Changes of Claim or Counterclaim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

E-3. Serving of Notices . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

E-4. Appointment and Qualifications of Arbitrator . . . . . . . . . . . . . . . . . . . . . . . . . . 34

E-5. Exchange of Exhibits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

E-6. Proceedings on Documents and Procedures for the Resolution of Disputes
Through Document Submission . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

E-7. Date, Time, and Place of Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

E-8. The Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

E-9. Time of Award . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

E-10. Arbitrator's Compensation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36


Procedures for Large, Complex Commercial Disputes . . . . . . . . . . . . . . . . . . . . . . . . 37

L-1. Administrative Conference . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

L-2. Arbitrators . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

L-3. Management of Proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38


Administrative Fee Schedules (Standard and Flexible Fees) . . . . . . . . . . . . . . . . . . . 38


Commercial Mediation Procedures . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

M-1. Agreement of Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

M-2. Initiation of Mediation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

M-3. Representation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

M-4. Appointment of the Mediator . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

M-5. Mediator's Impartiality and Duty to Disclose . . . . . . . . . . . . . . . . . . . . . . . . . . 40

M-6. Vacancies . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

M-7. Duties and Responsibilities of the Mediator . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

M-8. Responsibilities of the Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

M-9. Privacy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

M-10. Confidentiality . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

M-11. No Stenographic Record . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

M-12. Termination of Mediation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

M-13. Exclusion of Liability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

M-14. Interpretation and Application of Procedures . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

M-15. Deposits  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

M-16. Expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

M-17. Cost of the Mediation  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44




# Commercial Arbitration Rules and Mediation Procedures

(Including Procedures for Large, Complex Commercial Disputes)

## Important Notice

These rules and any amendment of them shall apply in the form in effect at the time the administrative filing requirements are met for a demand for arbitration or submission agreement received by the AAA®. To ensure that you have the most current information, see our web site at **www.adr.org.**

## Introduction

Each year, many millions of business transactions take place. Occasionally, disagreements develop over these business transactions. Many of these disputes are resolved by arbitration, the voluntary submission of a dispute to an impartial person or persons for final and binding determination. Arbitration has proven to be an effective way to resolve these disputes privately, promptly, and economically.

The American Arbitration Association® (AAA), a not-for-profit, public service organization, offers a broad range of dispute resolution services to business executives, attorneys, individuals, trade associations, unions, management, consumers, families, communities, and all levels of government. Services are available through AAA headquarters in New York and through offices located in major cities throughout the United States. Hearings may be held at locations convenient for the parties and are not limited to cities with AAA offices. In addition, the AAA serves as a center for education and training, issues specialized publications, and conducts research on various forms of alternative dispute resolution.

## Standard Arbitration Clause

The parties can provide for arbitration of future disputes by inserting the following clause into their contracts:

> *Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be settled by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.*

Arbitration of existing disputes may be accomplished by use of the following:

> *We, the undersigned parties, hereby agree to submit to arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules the following Controversy: (describe briefly). We further agree that the above controversy be submitted to (one) (three) arbitrator(s). We further agree that we will faithfully observe this agreement and the rules, that we will abide by and perform any award rendered by the arbitrator(s), and that a judgment of any court having jurisdiction may be entered on the award.*

The services of the AAA are generally concluded with the transmittal of the award. Although there is voluntary compliance with the majority of awards, judgment on the award can be entered in a court having appropriate jurisdiction if necessary.

## Administrative Fees

The AAA charges a filing fee based on the amount of the claim or counterclaim. This fee information, which is included with these rules, allows the parties to exercise control over their administrative fees. The fees cover AAA administrative services; they do not cover arbitrator compensation or expenses, if any, reporting services, or any post-award charges incurred by the parties in enforcing the award.

## Mediation

Subject to the right of any party to opt out, in cases where a claim or counterclaim exceeds $75,000, the rules provide that the parties shall mediate their dispute upon the administration of the arbitration or at any time when the arbitration is pending. In mediation, the neutral mediator assists the parties in

reaching a settlement but does not have the authority to make a binding decision or award. Mediation is administered by the AAA in accordance with its Commercial Mediation Procedures. There is no additional filing fee where parties to a pending arbitration attempt to mediate their dispute under the AAA's auspices.

Although these rules include a mediation procedure that will apply to many cases, parties may still want to incorporate mediation into their contractual dispute settlement process. Parties can do so by inserting the following mediation clause into their contract in conjunction with a standard arbitration provision:

> *If a dispute arises out of or relates to this contract, or the breach thereof, and if the dispute cannot be settled through negotiation, the parties agree first to try in good faith to settle the dispute by mediation administered by the American Arbitration Association under its Commercial Mediation Procedures before resorting to arbitration, litigation, or some other dispute resolution procedure.*

If the parties want to use a mediator to resolve an existing dispute, they can enter into the following submission agreement:

> *The parties hereby submit the following dispute to mediation administered by the American Arbitration Association under its Commercial Mediation Procedures. (The clause may also provide for the qualifications of the mediator(s), method of payment, locale of meetings, and any other item of concern to the parties.)*

## Large, Complex Cases

Unless the parties agree otherwise, the procedures for Large, Complex Commercial Disputes, which appear in this pamphlet, will be applied to all cases administered by the AAA under the Commercial Arbitration Rules in which the disclosed claim or counterclaim of any party is at least $500,000 exclusive of claimed interest, arbitration fees and costs. The key features of these procedures include:

> A highly qualified, trained Roster of Neutrals;
> A mandatory preliminary hearing with the arbitrators, which may be conducted by teleconference;
> Broad arbitrator authority to order and control the exchange of information, including depositions;
> A presumption that hearings will proceed on a consecutive or block basis.

## Commercial Arbitration Rules

### R-1. Agreement of Parties*

**(a)** The parties shall be deemed to have made these rules a part of their arbitration agreement whenever they have provided for arbitration by the American Arbitration Association (hereinafter AAA) under its Commercial Arbitration Rules or for arbitration by the AAA of a domestic commercial dispute without specifying particular rules. These rules and any amendment of them shall apply in the form in effect at the time the administrative requirements are met for a Demand for Arbitration or Submission Agreement received by the AAA. Any disputes regarding which AAA rules shall apply shall be decided by the AAA. The parties, by written agreement, may vary the procedures set forth in these rules. After appointment of the arbitrator, such modifications may be made only with the consent of the arbitrator.

**(b)** Unless the parties or the AAA determines otherwise, the Expedited Procedures shall apply in any case in which no disclosed claim or counterclaim exceeds $75,000, exclusive of interest, attorneys' fees, and arbitration fees and costs.

Parties may also agree to use these procedures in larger cases. Unless the parties agree otherwise, these procedures will not apply in cases involving more than two parties. The Expedited Procedures shall be applied as described in Sections E-1 through E-10 of these rules, in addition to any other portion of these rules that is not in conflict with the Expedited Procedures.

**(c)** Unless the parties agree otherwise, the Procedures for Large, Complex Commercial Disputes shall apply to all cases in which the disclosed claim or counterclaim of any party is at least $500,000 or more, exclusive of claimed interest, attorneys' fees, arbitration fees and costs. Parties may also agree to use the procedures in cases involving claims or counterclaims under $500,000, or in nonmonetary cases. The Procedures for Large, Complex Commercial Disputes shall be applied as described in Sections L-1 through L-3 of these rules, in addition to any other portion of these rules that is not in conflict with the Procedures for Large, Complex Commercial Disputes.

**(d)** Parties may, by agreement, apply the Expedited Procedures, the Procedures for Large, Complex Commercial Disputes, or the Procedures for the Resolution of Disputes through Document Submission (Rule E-6) to any dispute.

**(e)** All other cases shall be administered in accordance with Sections R-1 through R-58 of these rules.

*\* Beginning October 1, 2017, AAA will apply the Employment Fee Schedule to any dispute between an individual employee or an independent contractor (working or performing as an individual and not incorporated) and a business or organization and the dispute involves work or work-related claims, including any statutory claims and including work-related claims under independent contractor agreements. A dispute arising out of an employment plan will be administered under the AAA's Employment Arbitration Rules and Mediation Procedures. A dispute arising out of a consumer arbitration agreement will be administered under the AAA's Consumer Arbitration Rules.*

### R-2. AAA and Delegation of Duties

When parties agree to arbitrate under these rules, or when they provide for arbitration by the AAA and an arbitration is initiated under these rules, they thereby authorize the AAA to administer the arbitration. The authority and duties of the AAA are prescribed in the agreement of the parties and in these rules, and may be carried out through such of the AAA's representatives as it may direct. The AAA may, in its discretion, assign the administration of an arbitration to any of its offices. Arbitrations administered under these rules shall only be administered by the AAA or by an individual or organization authorized by the AAA to do so.

### R-3. National Roster of Arbitrators

The AAA shall establish and maintain a National Roster of Arbitrators ("National Roster") and shall appoint arbitrators as provided in these rules. The term "arbitrator" in these rules refers to the arbitration panel, constituted for a particular case, whether composed of one or more arbitrators, or to an individual arbitrator, as the context requires.

### R-4. Filing Requirements

**(a)** Arbitration under an arbitration provision in a contract shall be initiated by the initiating party ("claimant") filing with the AAA a Demand for Arbitration, the administrative filing fee, and a copy of the applicable arbitration agreement from the parties' contract which provides for arbitration.

**(b)** Arbitration pursuant to a court order shall be initiated by the initiating party filing with the AAA a Demand for Arbitration, the administrative filing fee, and a copy of any applicable arbitration agreement from the parties' contract which provides for arbitration.

   **i.** The filing party shall include a copy of the court order.

   **ii.** The filing fee must be paid before a matter is considered properly filed. If the court order directs that a specific party is responsible for the filing fee, it is the responsibility of the filing party to either make such payment to the AAA and seek reimbursement as directed in the court order or to make other such arrangements so that the filing fee is submitted to the AAA with the Demand.

   **iii.** The party filing the Demand with the AAA is the claimant and the opposing party is the respondent regardless of which party initiated the court action. Parties may request that the arbitrator alter the order of proceedings if necessary pursuant to R-32.

**(c)** It is the responsibility of the filing party to ensure that any conditions precedent to the filing of a case are met prior to filing for an arbitration, as well as any time requirements associated with the filing. Any dispute regarding whether a condition precedent has been met may be raised to the arbitrator for determination.

**(d)** Parties to any existing dispute who have not previously agreed to use these rules may commence an arbitration under these rules by filing a written submission agreement and the administrative filing fee. To the extent that the parties' submission agreement contains any variances from these rules, such variances should be clearly stated in the Submission Agreement.

**(e)** Information to be included with any arbitration filing includes:

**i.** the name of each party;

**ii.** the address for each party, including telephone and fax numbers and e-mail addresses;

**iii.** if applicable, the names, addresses, telephone and fax numbers, and e-mail addresses of any known representative for each party;

**iv.** a statement setting forth the nature of the claim including the relief sought and the amount involved; and

**v.** the locale requested if the arbitration agreement does not specify one.

**(f)** The initiating party may file or submit a dispute to the AAA in the following manner:

**i.** through AAA WebFile, located at **www.adr.org;** or

**ii.** by filing the complete Demand or Submission with any AAA office, regardless of the intended locale of hearing.

**(g)** The filing party shall simultaneously provide a copy of the Demand and any supporting documents to the opposing party.

**(h)** The AAA shall provide notice to the parties (or their representatives if so named) of the receipt of a Demand or Submission when the administrative filing requirements have been satisfied. The date on which the filing requirements are satisfied shall establish the date of filing the dispute for administration. However, all disputes in connection with the AAA's determination of the date of filing may be decided by the arbitrator.

**(i)** If the filing does not satisfy the filing requirements set forth above, the AAA shall acknowledge to all named parties receipt of the incomplete filing and inform the parties of the filing deficiencies. If the deficiencies are not cured by the date specified by the AAA, the filing may be returned to the initiating party.

## R-5. Answers and Counterclaims

**(a)** A respondent may file an answering statement with the AAA within 14 calendar days after notice of the filing of the Demand is sent by the AAA. The respondent shall, at the time of any such filing, send a copy of any answering statement to the claimant and to all other parties to the arbitration. If no answering statement is filed within the stated time, the respondent will be deemed to deny the claim. Failure to file an answering statement shall not operate to delay the arbitration.

**(b)** A respondent may file a counterclaim at any time after notice of the filing of the Demand is sent by the AAA, subject to the limitations set forth in Rule R-6. The respondent shall send a copy of the counterclaim to the claimant and all other parties to the arbitration. If a counterclaim is asserted, it shall include a statement setting forth the nature of the counterclaim including the relief sought and the amount involved. The filing fee as specified in the applicable AAA Fee Schedule must be paid at the time of the filing of any counterclaim.

**(c)** If the respondent alleges that a different arbitration provision is controlling, the matter will be administered in accordance with the arbitration provision submitted by the initiating party subject to a final determination by the arbitrator.

**(d)** If the counterclaim does not meet the requirements for filing a claim and the deficiency is not cured by the date specified by the AAA, it may be returned to the filing party.

## R-6. Changes of Claim

**(a)** A party may at any time prior to the close of the hearing or by the date established by the arbitrator increase or decrease the amount of its claim or counterclaim. Written notice of the change of claim amount must be provided to the AAA and all parties. If the change of claim amount results in an increase in administrative fee, the balance of the fee is due before the change of claim amount may be accepted by the arbitrator.

**(b)** Any new or different claim or counterclaim, as opposed to an increase or decrease in the amount of a pending claim or counterclaim, shall be made in writing and filed with the AAA, and a copy shall be provided to the other party, who shall have a period of 14 calendar days from the date of such transmittal within which to file an answer to the proposed change of claim or counterclaim with the AAA. After the arbitrator is appointed, however, no new or different claim may be submitted except with the arbitrator's consent.

## R-7. Jurisdiction

**(a)** The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim.

**(b)** The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part. Such an arbitration clause shall be treated as an agreement independent of the other terms of the contract. A decision by the arbitrator that the contract is null and void shall not for that reason alone render invalid the arbitration clause.

**(c)** A party must object to the jurisdiction of the arbitrator or to the arbitrability of a claim or counterclaim no later than the filing of the answering statement to the claim or counterclaim that gives rise to the objection. The arbitrator may rule on such objections as a preliminary matter or as part of the final award.

### R-8. Interpretation and Application of Rules

The arbitrator shall interpret and apply these rules insofar as they relate to the arbitrator's powers and duties. When there is more than one arbitrator and a difference arises among them concerning the meaning or application of these rules, it shall be decided by a majority vote. If that is not possible, either an arbitrator or a party may refer the question to the AAA for final decision. All other rules shall be interpreted and applied by the AAA.

### R-9. Mediation

In all cases where a claim or counterclaim exceeds $75,000, upon the AAA's administration of the arbitration or at any time while the arbitration is pending, the parties shall mediate their dispute pursuant to the applicable provisions of the AAA's Commercial Mediation Procedures, or as otherwise agreed by the parties. Absent an agreement of the parties to the contrary, the mediation shall take place concurrently with the arbitration and shall not serve to delay the arbitration proceedings. However, any party to an arbitration may unilaterally opt out of this rule upon notification to the AAA and the other parties to the arbitration. The parties shall confirm the completion of any mediation or any decision to opt out of this rule to the AAA. Unless agreed to by all parties and the mediator, the mediator shall not be appointed as an arbitrator to the case.

### R-10. Administrative Conference

At the request of any party or upon the AAA's own initiative, the AAA may conduct an administrative conference, in person or by telephone, with the parties and/or their representatives. The conference may address such issues as arbitrator selection, mediation of the dispute, potential exchange of information, a timetable for hearings, and any other administrative matters.

### R-11. Fixing of Locale

The parties may mutually agree on the locale where the arbitration is to be held. Any disputes regarding the locale that are to be decided by the AAA must be submitted to the AAA and all other parties within 14 calendar days from the date of the AAA's initiation of the case or the date established by the AAA. Disputes regarding locale shall be determined in the following manner:

**(a)** When the parties' arbitration agreement is silent with respect to locale, and if the parties disagree as to the locale, the AAA may initially determine the place of

arbitration, subject to the power of the arbitrator after appointment, to make a final determination on the locale.

**(b)** When the parties' arbitration agreement requires a specific locale, absent the parties' agreement to change it, or a determination by the arbitrator upon appointment that applicable law requires a different locale, the locale shall be that specified in the arbitration agreement.

**(c)** If the reference to a locale in the arbitration agreement is ambiguous, and the parties are unable to agree to a specific locale, the AAA shall determine the locale, subject to the power of the arbitrator to finally determine the locale.

The arbitrator, at the arbitrator's sole discretion, shall have the authority to conduct special hearings for document production purposes or otherwise at other locations if reasonably necessary and beneficial to the process.

## R-12. Appointment from National Roster

If the parties have not appointed an arbitrator and have not provided any other method of appointment, the arbitrator shall be appointed in the following manner:

**(a)** The AAA shall send simultaneously to each party to the dispute an identical list of 10 (unless the AAA decides that a different number is appropriate) names of persons chosen from the National Roster. The parties are encouraged to agree to an arbitrator from the submitted list and to advise the AAA of their agreement.

**(b)** If the parties are unable to agree upon an arbitrator, each party to the dispute shall have 14 calendar days from the transmittal date in which to strike names objected to, number the remaining names in order of preference, and return the list to the AAA. The parties are not required to exchange selection lists. If a party does not return the list within the time specified, all persons named therein shall be deemed acceptable to that party. From among the persons who have been approved on both lists, and in accordance with the designated order of mutual preference, the AAA shall invite the acceptance of an arbitrator to serve. If the parties fail to agree on any of the persons named, or if acceptable arbitrators are unable to act, or if for any other reason the appointment cannot be made from the submitted lists, the AAA shall have the power to make the appointment from among other members of the National Roster without the submission of additional lists.

**(c)** Unless the parties agree otherwise, when there are two or more claimants or two or more respondents, the AAA may appoint all the arbitrators.

### R-13. Direct Appointment by a Party

**(a)** If the agreement of the parties names an arbitrator or specifies a method of appointing an arbitrator, that designation or method shall be followed. The notice of appointment, with the name and address of the arbitrator, shall be filed with the AAA by the appointing party. Upon the request of any appointing party, the AAA shall submit a list of members of the National Roster from which the party may, if it so desires, make the appointment.

**(b)** Where the parties have agreed that each party is to name one arbitrator, the arbitrators so named must meet the standards of Section R-18 with respect to impartiality and independence unless the parties have specifically agreed pursuant to Section R-18(b) that the party-appointed arbitrators are to be non-neutral and need not meet those standards.

**(c)** If the agreement specifies a period of time within which an arbitrator shall be appointed and any party fails to make the appointment within that period, the AAA shall make the appointment.

**(d)** If no period of time is specified in the agreement, the AAA shall notify the party to make the appointment. If within 14 calendar days after such notice has been sent, an arbitrator has not been appointed by a party, the AAA shall make the appointment.

### R-14. Appointment of Chairperson by Party-Appointed Arbitrators or Parties

**(a)** If, pursuant to Section R-13, either the parties have directly appointed arbitrators, or the arbitrators have been appointed by the AAA, and the parties have authorized them to appoint a chairperson within a specified time and no appointment is made within that time or any agreed extension, the AAA may appoint the chairperson.

**(b)** If no period of time is specified for appointment of the chairperson, and the party-appointed arbitrators or the parties do not make the appointment within 14 calendar days from the date of the appointment of the last party-appointed arbitrator, the AAA may appoint the chairperson.

**(c)** If the parties have agreed that their party-appointed arbitrators shall appoint the chairperson from the National Roster, the AAA shall furnish to the party-appointed arbitrators, in the manner provided in Section R-12, a list selected from the National Roster, and the appointment of the chairperson shall be made as provided in that Section.

### R-15. Nationality of Arbitrator

Where the parties are nationals of different countries, the AAA, at the request of any party or on its own initiative, may appoint as arbitrator a national of a country other than that of any of the parties. The request must be made before the time set for the appointment of the arbitrator as agreed by the parties or set by these rules.

### R-16. Number of Arbitrators

**(a)** If the arbitration agreement does not specify the number of arbitrators, the dispute shall be heard and determined by one arbitrator, unless the AAA, in its discretion, directs that three arbitrators be appointed. A party may request three arbitrators in the Demand or Answer, which request the AAA will consider in exercising its discretion regarding the number of arbitrators appointed to the dispute.

**(b)** Any request for a change in the number of arbitrators as a result of an increase or decrease in the amount of a claim or a new or different claim must be made to the AAA and other parties to the arbitration no later than seven calendar days after receipt of the R-6 required notice of change of claim amount. If the parties are unable to agree with respect to the request for a change in the number of arbitrators, the AAA shall make that determination.

### R-17. Disclosure

**(a)** Any person appointed or to be appointed as an arbitrator, as well as the parties and their representatives, shall disclose to the AAA any circumstance likely to give rise to justifiable doubt as to the arbitrator's impartiality or independence, including any bias or any financial or personal interest in the result of the arbitration or any past or present relationship with the parties or their representatives. Such obligation shall remain in effect throughout the arbitration. Failure on the part of a party or a representative to comply with the requirements of this rule may result in the waiver of the right to object to an arbitrator in accordance with Rule R-41.

**(b)** Upon receipt of such information from the arbitrator or another source, the AAA shall communicate the information to the parties and, if it deems it appropriate to do so, to the arbitrator and others.

**(c)** Disclosure of information pursuant to this Section R-17 is not an indication that the arbitrator considers that the disclosed circumstance is likely to affect impartiality or independence.

## R-18. Disqualification of Arbitrator

**(a)** Any arbitrator shall be impartial and independent and shall perform his or her duties with diligence and in good faith, and shall be subject to disqualification for:

   **i.** partiality or lack of independence,

   **ii.** inability or refusal to perform his or her duties with diligence and in good faith, and

   **iii.** any grounds for disqualification provided by applicable law.

**(b)** The parties may agree in writing, however, that arbitrators directly appointed by a party pursuant to Section R-13 shall be non-neutral, in which case such arbitrators need not be impartial or independent and shall not be subject to disqualification for partiality or lack of independence.

**(c)** Upon objection of a party to the continued service of an arbitrator, or on its own initiative, the AAA shall determine whether the arbitrator should be disqualified under the grounds set out above, and shall inform the parties of its decision, which decision shall be conclusive.

## R-19. Communication with Arbitrator

**(a)** No party and no one acting on behalf of any party shall communicate *ex parte* with an arbitrator or a candidate for arbitrator concerning the arbitration, except that a party, or someone acting on behalf of a party, may communicate *ex parte* with a candidate for direct appointment pursuant to R-13 in order to advise the candidate of the general nature of the controversy and of the anticipated proceedings and to discuss the candidate's qualifications, availability, or independence in relation to the parties or to discuss the suitability of candidates for selection as a third arbitrator where the parties or party-designated arbitrators are to participate in that selection.

**(b)** Section R-19(a) does not apply to arbitrators directly appointed by the parties who, pursuant to Section R-18(b), the parties have agreed in writing are non-neutral. Where the parties have so agreed under Section R-18(b), the AAA shall as an administrative practice suggest to the parties that they agree further that Section R-19(a) should nonetheless apply prospectively.

**(c)** In the course of administering an arbitration, the AAA may initiate communications with each party or anyone acting on behalf of the parties either jointly or individually.

**(d)** As set forth in R-43, unless otherwise instructed by the AAA or by the arbitrator, any documents submitted by any party or to the arbitrator shall simultaneously be provided to the other party or parties to the arbitration.

## R-20. Vacancies

**(a)** If for any reason an arbitrator is unable or unwilling to perform the duties of the office, the AAA may, on proof satisfactory to it, declare the office vacant. Vacancies shall be filled in accordance with the applicable provisions of these rules.

**(b)** In the event of a vacancy in a panel of neutral arbitrators after the hearings have commenced, the remaining arbitrator or arbitrators may continue with the hearing and determination of the controversy, unless the parties agree otherwise.

**(c)** In the event of the appointment of a substitute arbitrator, the panel of arbitrators shall determine in its sole discretion whether it is necessary to repeat all or part of any prior hearings.

## R-21. Preliminary Hearing

**(a)** At the discretion of the arbitrator, and depending on the size and complexity of the arbitration, a preliminary hearing should be scheduled as soon as practicable after the arbitrator has been appointed. The parties should be invited to attend the preliminary hearing along with their representatives. The preliminary hearing may be conducted in person or by telephone.

**(b)** At the preliminary hearing, the parties and the arbitrator should be prepared to discuss and establish a procedure for the conduct of the arbitration that is appropriate to achieve a fair, efficient, and economical resolution of the dispute. Sections P-1 and P-2 of these rules address the issues to be considered at the preliminary hearing.

## R-22. Pre-Hearing Exchange and Production of Information

**(a)** *Authority of arbitrator.* The arbitrator shall manage any necessary exchange of information among the parties with a view to achieving an efficient and economical resolution of the dispute, while at the same time promoting equality of treatment and safeguarding each party's opportunity to fairly present its claims and defenses.

**(b)** *Documents.* The arbitrator may, on application of a party or on the arbitrator's own initiative:

   **i.** require the parties to exchange documents in their possession or custody on which they intend to rely;

   **ii.** require the parties to update their exchanges of the documents on which they intend to rely as such documents become known to them;

   **iii.** require the parties, in response to reasonable document requests, to make available to the other party documents, in the responding party's possession or custody, not otherwise readily available to the party seeking the documents, reasonably believed by the party seeking the documents to exist and to be relevant and material to the outcome of disputed issues; and

**iv.** require the parties, when documents to be exchanged or produced are maintained in electronic form, to make such documents available in the form most convenient and economical for the party in possession of such documents, unless the arbitrator determines that there is good cause for requiring the documents to be produced in a different form. The parties should attempt to agree in advance upon, and the arbitrator may determine, reasonable search parameters to balance the need for production of electronically stored documents relevant and material to the outcome of disputed issues against the cost of locating and producing them.

## R-23. Enforcement Powers of the Arbitrator

The arbitrator shall have the authority to issue any orders necessary to enforce the provisions of rules R-21 and R-22 and to otherwise achieve a fair, efficient and economical resolution of the case, including, without limitation:

**(a)** conditioning any exchange or production of confidential documents and information, and the admission of confidential evidence at the hearing, on appropriate orders to preserve such confidentiality;

**(b)** imposing reasonable search parameters for electronic and other documents if the parties are unable to agree;

**(c)** allocating costs of producing documentation, including electronically stored documentation;

**(d)** in the case of willful non-compliance with any order issued by the arbitrator, drawing adverse inferences, excluding evidence and other submissions, and/or making special allocations of costs or an interim award of costs arising from such non-compliance; and

**(e)** issuing any other enforcement orders which the arbitrator is empowered to issue under applicable law.

## R-24. Date, Time, and Place of Hearing

The arbitrator shall set the date, time, and place for each hearing. The parties shall respond to requests for hearing dates in a timely manner, be cooperative in scheduling the earliest practicable date, and adhere to the established hearing schedule. The AAA shall send a notice of hearing to the parties at least 10 calendar days in advance of the hearing date, unless otherwise agreed by the parties.

### R-25. Attendance at Hearings

The arbitrator and the AAA shall maintain the privacy of the hearings unless the law provides to the contrary. Any person having a direct interest in the arbitration is entitled to attend hearings. The arbitrator shall otherwise have the power to require the exclusion of any witness, other than a party or other essential person, during the testimony of any other witness. It shall be discretionary with the arbitrator to determine the propriety of the attendance of any other person.

### R-26. Representation

Any party may participate without representation (*pro se*), or by counsel or any other representative of the party's choosing, unless such choice is prohibited by applicable law. A party intending to be so represented shall notify the other party and the AAA of the name, telephone number and address, and email address if available, of the representative at least seven calendar days prior to the date set for the hearing at which that person is first to appear. When such a representative initiates an arbitration or responds for a party, notice is deemed to have been given.

### R-27. Oaths

Before proceeding with the first hearing, each arbitrator may take an oath of office and, if required by law, shall do so. The arbitrator may require witnesses to testify under oath administered by any duly qualified person and, if it is required by law or requested by any party, shall do so.

### R-28. Stenographic Record

**(a)** Any party desiring a stenographic record shall make arrangements directly with a stenographer and shall notify the other parties of these arrangements at least three calendar days in advance of the hearing. The requesting party or parties shall pay the cost of the record.

**(b)** No other means of recording the proceedings will be permitted absent the agreement of the parties or per the direction of the arbitrator.

**(c)** If the transcript or any other recording is agreed by the parties or determined by the arbitrator to be the official record of the proceeding, it must be provided to the arbitrator and made available to the other parties for inspection, at a date, time, and place determined by the arbitrator.

**(d)** The arbitrator may resolve any disputes with regard to apportionment of the costs of the stenographic record or other recording.

### R-29. Interpreters

Any party wishing an interpreter shall make all arrangements directly with the interpreter and shall assume the costs of the service.

### R-30. Postponements

The arbitrator may postpone any hearing upon agreement of the parties, upon request of a party for good cause shown, or upon the arbitrator's own initiative.

### R-31. Arbitration in the Absence of a Party or Representative

Unless the law provides to the contrary, the arbitration may proceed in the absence of any party or representative who, after due notice, fails to be present or fails to obtain a postponement. An award shall not be made solely on the default of a party. The arbitrator shall require the party who is present to submit such evidence as the arbitrator may require for the making of an award.

### R-32. Conduct of Proceedings

**(a)** The claimant shall present evidence to support its claim. The respondent shall then present evidence to support its defense. Witnesses for each party shall also submit to questions from the arbitrator and the adverse party. The arbitrator has the discretion to vary this procedure, provided that the parties are treated with equality and that each party has the right to be heard and is given a fair opportunity to present its case.

**(b)** The arbitrator, exercising his or her discretion, shall conduct the proceedings with a view to expediting the resolution of the dispute and may direct the order of proof, bifurcate proceedings and direct the parties to focus their presentations on issues the decision of which could dispose of all or part of the case.

**(c)** When deemed appropriate, the arbitrator may also allow for the presentation of evidence by alternative means including video conferencing, internet communication, telephonic conferences and means other than an in-person presentation. Such alternative means must afford a full opportunity for all parties to present any evidence that the arbitrator deems material and relevant to the resolution of the dispute and, when involving witnesses, provide an opportunity for cross-examination.

**(d)** The parties may agree to waive oral hearings in any case and may also agree to utilize the Procedures for Resolution of Disputes Through Document Submission, found in Rule E-6.

## R-33. Dispositive Motions

The arbitrator may allow the filing of and make rulings upon a dispositive motion only if the arbitrator determines that the moving party has shown that the motion is likely to succeed and dispose of or narrow the issues in the case.

## R-34. Evidence

**(a)** The parties may offer such evidence as is relevant and material to the dispute and shall produce such evidence as the arbitrator may deem necessary to an understanding and determination of the dispute. Conformity to legal rules of evidence shall not be necessary. All evidence shall be taken in the presence of all of the arbitrators and all of the parties, except where any of the parties is absent, in default, or has waived the right to be present.

**(b)** The arbitrator shall determine the admissibility, relevance, and materiality of the evidence offered and may exclude evidence deemed by the arbitrator to be cumulative or irrelevant.

**(c)** The arbitrator shall take into account applicable principles of legal privilege, such as those involving the confidentiality of communications between a lawyer and client.

**(d)** An arbitrator or other person authorized by law to subpoena witnesses or documents may do so upon the request of any party or independently.

## R-35. Evidence by Written Statements and Post-Hearing Filing of Documents or Other Evidence

**(a)** At a date agreed upon by the parties or ordered by the arbitrator, the parties shall give written notice for any witness or expert witness who has provided a written witness statement to appear in person at the arbitration hearing for examination. If such notice is given, and the witness fails to appear, the arbitrator may disregard the written witness statement and/or expert report of the witness or make such other order as the arbitrator may consider to be just and reasonable.

**(b)** If a witness whose testimony is represented by a party to be essential is unable or unwilling to testify at the hearing, either in person or through electronic or other means, either party may request that the arbitrator order the witness to appear in person for examination before the arbitrator at a time and location where the witness is willing and able to appear voluntarily or can legally be compelled to do so. Any such order may be conditioned upon payment by the requesting party of all reasonable costs associated with such examination.

**(c)** If the parties agree or the arbitrator directs that documents or other evidence be submitted to the arbitrator after the hearing, the documents or other evidence shall be filed with the AAA for transmission to the arbitrator. All parties shall be afforded an opportunity to examine and respond to such documents or other evidence.

### R-36. Inspection or Investigation

An arbitrator finding it necessary to make an inspection or investigation in connection with the arbitration shall direct the AAA to so advise the parties. The arbitrator shall set the date and time and the AAA shall notify the parties. Any party who so desires may be present at such an inspection or investigation. In the event that one or all parties are not present at the inspection or investigation, the arbitrator shall make an oral or written report to the parties and afford them an opportunity to comment.

### R-37. Interim Measures

**(a)** The arbitrator may take whatever interim measures he or she deems necessary, including injunctive relief and measures for the protection or conservation of property and disposition of perishable goods.

**(b)** Such interim measures may take the form of an interim award, and the arbitrator may require security for the costs of such measures.

**(c)** A request for interim measures addressed by a party to a judicial authority shall not be deemed incompatible with the agreement to arbitrate or a waiver of the right to arbitrate.

### R-38. Emergency Measures of Protection

**(a)** Unless the parties agree otherwise, the provisions of this rule shall apply to arbitrations conducted under arbitration clauses or agreements entered on or after October 1, 2013.

**(b)** A party in need of emergency relief prior to the constitution of the panel shall notify the AAA and all other parties in writing of the nature of the relief sought and the reasons why such relief is required on an emergency basis. The application shall also set forth the reasons why the party is entitled to such relief. Such notice may be given by facsimile or e-mail or other reliable means, but must include a statement certifying that all other parties have been notified or an explanation of the steps taken in good faith to notify other parties.

**(c)** Within one business day of receipt of notice as provided in section (b), the AAA shall appoint a single emergency arbitrator designated to rule on emergency applications. The emergency arbitrator shall immediately disclose any circumstance likely, on the basis of the facts disclosed on the application, to affect such arbitrator's impartiality or independence. Any challenge to the appointment of the emergency arbitrator must be made within one business day of the communication by the AAA to the parties of the appointment of the emergency arbitrator and the circumstances disclosed.

**(d)** The emergency arbitrator shall as soon as possible, but in any event within two business days of appointment, establish a schedule for consideration of the application for emergency relief. Such a schedule shall provide a reasonable opportunity to all parties to be heard, but may provide for proceeding by telephone or video conference or on written submissions as alternatives to a formal hearing. The emergency arbitrator shall have the authority vested in the tribunal under Rule 7, including the authority to rule on her/his own jurisdiction, and shall resolve any disputes over the applicability of this Rule 38.

**(e)** If after consideration the emergency arbitrator is satisfied that the party seeking the emergency relief has shown that immediate and irreparable loss or damage shall result in the absence of emergency relief, and that such party is entitled to such relief, the emergency arbitrator may enter an interim order or award granting the relief and stating the reason therefore.

**(f)** Any application to modify an interim award of emergency relief must be based on changed circumstances and may be made to the emergency arbitrator until the panel is constituted; thereafter such a request shall be addressed to the panel. The emergency arbitrator shall have no further power to act after the panel is constituted unless the parties agree that the emergency arbitrator is named as a member of the panel.

**(g)** Any interim award of emergency relief may be conditioned on provision by the party seeking such relief for appropriate security.

**(h)** A request for interim measures addressed by a party to a judicial authority shall not be deemed incompatible with this rule, the agreement to arbitrate or a waiver of the right to arbitrate. If the AAA is directed by a judicial authority to nominate a special master to consider and report on an application for emergency relief, the AAA shall proceed as provided in this rule and the references to the emergency arbitrator shall be read to mean the special master, except that the special master shall issue a report rather than an interim award.

**(i)** The costs associated with applications for emergency relief shall initially be apportioned by the emergency arbitrator or special master, subject to the power of the tribunal to determine finally the apportionment of such costs.

## R-39. Closing of Hearing

**(a)** The arbitrator shall specifically inquire of all parties whether they have any further proofs to offer or witnesses to be heard. Upon receiving negative replies or if satisfied that the record is complete, the arbitrator shall declare the hearing closed.

**(b)** If documents or responses are to be filed as provided in Rule R-35, or if briefs are to be filed, the hearing shall be declared closed as of the final date set by the arbitrator for the receipt of briefs. If no documents, responses, or briefs are to be filed, the arbitrator shall declare the hearings closed as of the date of the last hearing (including telephonic hearings). If the case was heard without any oral hearings, the arbitrator shall close the hearings upon the due date established for receipt of the final submission.

**(c)** The time limit within which the arbitrator is required to make the award shall commence, in the absence of other agreements by the parties, upon the closing of the hearing. The AAA may extend the time limit for rendering of the award only in unusual and extreme circumstances.

## R-40. Reopening of Hearing

The hearing may be reopened on the arbitrator's initiative, or by the direction of the arbitrator upon application of a party, at any time before the award is made. If reopening the hearing would prevent the making of the award within the specific time agreed to by the parties in the arbitration agreement, the matter may not be reopened unless the parties agree to an extension of time. When no specific date is fixed by agreement of the parties , the arbitrator shall have 30 calendar days from the closing of the reopened hearing within which to make an award (14 calendar days if the case is governed by the Expedited Procedures).

## R-41. Waiver of Rules

Any party who proceeds with the arbitration after knowledge that any provision or requirement of these rules has not been complied with and who fails to state an objection in writing shall be deemed to have waived the right to object.

## R-42. Extensions of Time

The parties may modify any period of time by mutual agreement. The AAA or the arbitrator may for good cause extend any period of time established by these rules, except the time for making the award. The AAA shall notify the parties of any extension.

## R-43. Serving of Notice and Communications

**(a)** Any papers, notices, or process necessary or proper for the initiation or continuation of an arbitration under these rules, for any court action in connection therewith, or for the entry of judgment on any award made under these rules may be served on a party by mail addressed to the party or its representative at the last known address or by personal service, in or outside the state where the arbitration is to be held, provided that reasonable opportunity to be heard with regard to the dispute is or has been granted to the party.

**(b)** The AAA, the arbitrator and the parties may also use overnight delivery or electronic facsimile transmission (fax), or electronic (e-mail) to give the notices required by these rules. Where all parties and the arbitrator agree, notices may be transmitted by e-mail or other methods of communication.

**(c)** Unless otherwise instructed by the AAA or by the arbitrator, any documents submitted by any party to the AAA or to the arbitrator shall simultaneously be provided to the other party or parties to the arbitration.

**(d)** Unless otherwise instructed by the AAA or by the arbitrator, all written communications made by any party to the AAA or to the arbitrator shall simultaneously be provided to the other party or parties to the arbitration.

**(e)** Failure to provide the other party with copies of communications made to the AAA or to the arbitrator may prevent the AAA or the arbitrator from acting on any requests or objections contained therein.

**(f)** The AAA may direct that any oral or written communications that are sent by a party or their representative shall be sent in a particular manner. The failure of a party or their representative to do so may result in the AAA's refusal to consider the issue raised in the communication.

## R-44. Majority Decision

**(a)** When the panel consists of more than one arbitrator, unless required by law or by the arbitration agreement or section (b) of this rule, a majority of the arbitrators must make all decisions.

**(b)** Where there is a panel of three arbitrators, absent an objection of a party or another member of the panel, the chairperson of the panel is authorized to resolve any disputes related to the exchange of information or procedural matters without the need to consult the full panel.

## R-45. Time of Award

The award shall be made promptly by the arbitrator and, unless otherwise agreed by the parties or specified by law, no later than 30 calendar days from the date of closing the hearing, or, if oral hearings have been waived, from the due date set for receipt of the parties' final statements and proofs.

## R-46. Form of Award

**(a)** Any award shall be in writing and signed by a majority of the arbitrators. It shall be executed in the form and manner required by law.

**(b)** The arbitrator need not render a reasoned award unless the parties request such an award in writing prior to appointment of the arbitrator or unless the arbitrator determines that a reasoned award is appropriate.

### R-47. Scope of Award

**(a)** The arbitrator may grant any remedy or relief that the arbitrator deems just and equitable and within the scope of the agreement of the parties, including, but not limited to, specific performance of a contract.

**(b)** In addition to a final award, the arbitrator may make other decisions, including interim, interlocutory, or partial rulings, orders, and awards. In any interim, interlocutory, or partial award, the arbitrator may assess and apportion the fees, expenses, and compensation related to such award as the arbitrator determines is appropriate.

**(c)** In the final award, the arbitrator shall assess the fees, expenses, and compensation provided in Sections R-53, R-54, and R-55. The arbitrator may apportion such fees, expenses, and compensation among the parties in such amounts as the arbitrator determines is appropriate.

**(d)** The award of the arbitrator(s) may include:

    **i.** interest at such rate and from such date as the arbitrator(s) may deem appropriate; and

    **ii.** an award of attorneys' fees if all parties have requested such an award or it is authorized by law or their arbitration agreement.

### R-48. Award Upon Settlement—Consent Award

**(a)** If the parties settle their dispute during the course of the arbitration and if the parties so request, the arbitrator may set forth the terms of the settlement in a "consent award." A consent award must include an allocation of arbitration costs, including administrative fees and expenses as well as arbitrator fees and expenses.

**(b)** The consent award shall not be released to the parties until all administrative fees and all arbitrator compensation have been paid in full.

### R-49. Delivery of Award to Parties

Parties shall accept as notice and delivery of the award the placing of the award or a true copy thereof in the mail addressed to the parties or their representatives at their last known addresses, personal or electronic service of the award, or the filing of the award in any other manner that is permitted by law.

### R-50. Modification of Award

Within 20 calendar days after the transmittal of an award, any party, upon notice to the other parties, may request the arbitrator, through the AAA, to correct any clerical, typographical, or computational errors in the award. The arbitrator is not empowered to redetermine the merits of any claim already decided. The other

parties shall be given 10 calendar days to respond to the request. The arbitrator shall dispose of the request within 20 calendar days after transmittal by the AAA to the arbitrator of the request and any response thereto.

## R-51. Release of Documents for Judicial Proceedings

The AAA shall, upon the written request of a party to the arbitration, furnish to the party, at its expense, copies or certified copies of any papers in the AAA's possession that are not determined by the AAA to be privileged or confidential.

## R-52. Applications to Court and Exclusion of Liability

**(a)** No judicial proceeding by a party relating to the subject matter of the arbitration shall be deemed a waiver of the party's right to arbitrate.

**(b)** Neither the AAA nor any arbitrator in a proceeding under these rules is a necessary or proper party in judicial proceedings relating to the arbitration.

**(c)** Parties to an arbitration under these rules shall be deemed to have consented that judgment upon the arbitration award may be entered in any federal or state court having jurisdiction thereof.

**(d)** Parties to an arbitration under these rules shall be deemed to have consented that neither the AAA nor any arbitrator shall be liable to any party in any action for damages or injunctive relief for any act or omission in connection with any arbitration under these rules.

**(e)** Parties to an arbitration under these rules may not call the arbitrator, the AAA, or AAA employees as a witness in litigation or any other proceeding relating to the arbitration. The arbitrator, the AAA and AAA employees are not competent to testify as witnesses in any such proceeding.

## R-53. Administrative Fees

As a not-for-profit organization, the AAA shall prescribe administrative fees to compensate it for the cost of providing administrative services. The fees in effect when the fee or charge is incurred shall be applicable. The filing fee shall be advanced by the party or parties making a claim or counterclaim, subject to final apportionment by the arbitrator in the award. The AAA may, in the event of extreme hardship on the part of any party, defer or reduce the administrative fees.

## R-54. Expenses

The expenses of witnesses for either side shall be paid by the party producing such witnesses. All other expenses of the arbitration, including required travel and other expenses of the arbitrator, AAA representatives, and any witness and

the cost of any proof produced at the direct request of the arbitrator, shall be borne equally by the parties, unless they agree otherwise or unless the arbitrator in the award assesses such expenses or any part thereof against any specified party or parties.

### R-55. Neutral Arbitrator's Compensation

(a) Arbitrators shall be compensated at a rate consistent with the arbitrator's stated rate of compensation.

(b) If there is disagreement concerning the terms of compensation, an appropriate rate shall be established with the arbitrator by the AAA and confirmed to the parties.

(c) Any arrangement for the compensation of a neutral arbitrator shall be made through the AAA and not directly between the parties and the arbitrator.

### R-56. Deposits

(a) The AAA may require the parties to deposit in advance of any hearings such sums of money as it deems necessary to cover the expense of the arbitration, including the arbitrator's fee, if any, and shall render an accounting to the parties and return any unexpended balance at the conclusion of the case.

(b) Other than in cases where the arbitrator serves for a flat fee, deposit amounts requested will be based on estimates provided by the arbitrator. The arbitrator will determine the estimated amount of deposits using the information provided by the parties with respect to the complexity of each case.

(c) Upon the request of any party, the AAA shall request from the arbitrator an itemization or explanation for the arbitrator's request for deposits.

### R-57. Remedies for Nonpayment

If arbitrator compensation or administrative charges have not been paid in full, the AAA may so inform the parties in order that one of them may advance the required payment.

(a) Upon receipt of information from the AAA that payment for administrative charges or deposits for arbitrator compensation have not been paid in full, to the extent the law allows, a party may request that the arbitrator take specific measures relating to a party's non-payment.

(b) Such measures may include, but are not limited to, limiting a party's ability to assert or pursue their claim. In no event, however, shall a party be precluded from defending a claim or counterclaim.

**(c)** The arbitrator must provide the party opposing a request for such measures with the opportunity to respond prior to making any ruling regarding the same.

**(d)** In the event that the arbitrator grants any request for relief which limits any party's participation in the arbitration, the arbitrator shall require the party who is making a claim and who has made appropriate payments to submit such evidence as the arbitrator may require for the making of an award.

**(e)** Upon receipt of information from the AAA that full payments have not been received, the arbitrator, on the arbitrator's own initiative or at the request of the AAA or a party, may order the suspension of the arbitration. If no arbitrator has yet been appointed, the AAA may suspend the proceedings.

**(f)** If the arbitration has been suspended by either the AAA or the arbitrator and the parties have failed to make the full deposits requested within the time provided after the suspension, the arbitrator, or the AAA if an arbitrator has not been appointed, may terminate the proceedings.

## R-58. Sanctions

**(a)** The arbitrator may, upon a party's request, order appropriate sanctions where a party fails to comply with its obligations under these rules or with an order of the arbitrator. In the event that the arbitrator enters a sanction that limits any party's participation in the arbitration or results in an adverse determination of an issue or issues, the arbitrator shall explain that order in writing and shall require the submission of evidence and legal argument prior to making of an award. The arbitrator may not enter a default award as a sanction.

**(b)** The arbitrator must provide a party that is subject to a sanction request with the opportunity to respond prior to making any determination regarding the sanctions application.

## Preliminary Hearing Procedures

### P-1. General

**(a)** In all but the simplest cases, holding a preliminary hearing as early in the process as possible will help the parties and the arbitrator organize the proceeding in a manner that will maximize efficiency and economy, and will provide each party a fair opportunity to present its case.

**(b)** Care must be taken to avoid importing procedures from court systems, as such procedures may not be appropriate to the conduct of arbitrations as an alternative form of dispute resolution that is designed to be simpler, less expensive and more expeditious.

### P-2. Checklist

**(a)** The following checklist suggests subjects that the parties and the arbitrator should address at the preliminary hearing, in addition to any others that the parties or the arbitrator believe to be appropriate to the particular case. The items to be addressed in a particular case will depend on the size, subject matter, and complexity of the dispute, and are subject to the discretion of the arbitrator:

    **(i)** the possibility of other non-adjudicative methods of dispute resolution, including mediation pursuant to R-9;

    **(ii)** whether all necessary or appropriate parties are included in the arbitration;

    **(iii)** whether a party will seek a more detailed statement of claims, counterclaims or defenses;

    **(iv)** whether there are any anticipated amendments to the parties' claims, counterclaims, or defenses;

    **(v)** which

        **(a)** arbitration rules;

        **(b)** procedural law; and

        **(c)** substantive law govern the arbitration;

    **(vi)** whether there are any threshold or dispositive issues that can efficiently be decided without considering the entire case, including without limitation,

        **(a)** any preconditions that must be satisfied before proceeding with the arbitration;

        **(b)** whether any claim or counterclaim falls outside the arbitrator's jurisdiction or is otherwise not arbitrable;

        **(c)** consolidation of the claims or counterclaims with another arbitration; or

        **(d)** bifurcation of the proceeding.

**(vii)** whether the parties will exchange documents, including electronically stored documents, on which they intend to rely in the arbitration, and/or make written requests for production of documents within defined parameters;

**(viii)** whether to establish any additional procedures to obtain information that is relevant and material to the outcome of disputed issues;

**(ix)** how costs of any searches for requested information or documents that would result in substantial costs should be borne;

**(x)** whether any measures are required to protect confidential information;

**(xi)** whether the parties intend to present evidence from expert witnesses, and if so, whether to establish a schedule for the parties to identify their experts and exchange expert reports;

**(xii)** whether, according to a schedule set by the arbitrator, the parties will

**(a)** identify all witnesses, the subject matter of their anticipated testimonies, exchange written witness statements, and determine whether written witness statements will replace direct testimony at the hearing;

**(b)** exchange and pre-mark documents that each party intends to submit; and

**(c)** exchange pre-hearing submissions, including exhibits;

**(xiii)** the date, time and place of the arbitration hearing;

**(xiv)** whether, at the arbitration hearing,

**(a)** testimony may be presented in person, in writing, by videoconference, via the internet, telephonically, or by other reasonable means;

**(b)** there will be a stenographic transcript or other record of the proceeding and, if so, who will make arrangements to provide it;

**(xv)** whether any procedure needs to be established for the issuance of subpoenas;

**(xvi)** the identification of any ongoing, related litigation or arbitration;

**(xvii)** whether post-hearing submissions will be filed;

**(xviii)** the form of the arbitration award; and

**(xix)** any other matter the arbitrator considers appropriate or a party wishes to raise.

**(b)** The arbitrator shall issue a written order memorializing decisions made and agreements reached during or following the preliminary hearing.

## Expedited Procedures

### E-1. Limitation on Extensions

Except in extraordinary circumstances, the AAA or the arbitrator may grant a party no more than one seven-day extension of time to respond to the Demand for Arbitration or counterclaim as provided in Section R-5.

### E-2. Changes of Claim or Counterclaim

A claim or counterclaim may be increased in amount, or a new or different claim or counterclaim added, upon the agreement of the other party, or the consent of the arbitrator. After the arbitrator is appointed, however, no new or different claim or counterclaim may be submitted except with the arbitrator's consent. If an increased claim or counterclaim exceeds $75,000, the case will be administered under the regular procedures unless all parties and the arbitrator agree that the case may continue to be processed under the Expedited Procedures.

### E-3. Serving of Notices

In addition to notice provided by Section R-43, the parties shall also accept notice by telephone. Telephonic notices by the AAA shall subsequently be confirmed in writing to the parties. Should there be a failure to confirm in writing any such oral notice, the proceeding shall nevertheless be valid if notice has, in fact, been given by telephone.

### E-4. Appointment and Qualifications of Arbitrator

**(a)** The AAA shall simultaneously submit to each party an identical list of five proposed arbitrators drawn from its National Roster from which one arbitrator shall be appointed.

**(b)** The parties are encouraged to agree to an arbitrator from this list and to advise the AAA of their agreement. If the parties are unable to agree upon an arbitrator, each party may strike two names from the list and return it to the AAA within seven days from the date of the AAA's mailing to the parties. If for any reason the appointment of an arbitrator cannot be made from the list, the AAA may make the appointment from other members of the panel without the submission of additional lists.

**(c)** The parties will be given notice by the AAA of the appointment of the arbitrator, who shall be subject to disqualification for the reasons specified in Section R-18. The parties shall notify the AAA within seven calendar days of any objection to the arbitrator appointed. Any such objection shall be for cause and shall be confirmed in writing to the AAA with a copy to the other party or parties.

### E-5. Exchange of Exhibits

At least two business days prior to the hearing, the parties shall exchange copies of all exhibits they intend to submit at the hearing. The arbitrator shall resolve disputes concerning the exchange of exhibits.

### E-6. Proceedings on Documents and Procedures for the Resolution of Disputes Through Document Submission

Where no party's claim exceeds $25,000, exclusive of interest, attorneys' fees and arbitration costs, and other cases in which the parties agree, the dispute shall be resolved by submission of documents, unless any party requests an oral hearing, or the arbitrator determines that an oral hearing is necessary. Where cases are resolved by submission of documents, the following procedures may be utilized at the agreement of the parties or the discretion of the arbitrator:

**(a)** Within 14 calendar days of confirmation of the arbitrator's appointment, the arbitrator may convene a preliminary management hearing, via conference call, video conference, or internet, to establish a fair and equitable procedure for the submission of documents, and, if the arbitrator deems appropriate, a schedule for one or more telephonic or electronic conferences.

**(b)** The arbitrator has the discretion to remove the case from the documents-only process if the arbitrator determines that an in-person hearing is necessary.

**(c)** If the parties agree to in-person hearings after a previous agreement to proceed under this rule, the arbitrator shall conduct such hearings. If a party seeks to have in-person hearings after agreeing to this rule, but there is not agreement among the parties to proceed with in-person hearings, the arbitrator shall resolve the issue after the parties have been given the opportunity to provide their respective positions on the issue.

**(d)** The arbitrator shall establish the date for either written submissions or a final telephonic or electronic conference. Such date shall operate to close the hearing and the time for the rendering of the award shall commence.

**(e)** Unless the parties have agreed to a form of award other than that set forth in rule R-46, when the parties have agreed to resolve their dispute by this rule, the arbitrator shall render the award within 14 calendar days from the date the hearing is closed.

**(f)** If the parties agree to a form of award other than that described in rule R-46, the arbitrator shall have 30 calendar days from the date the hearing is declared closed in which to render the award.

**(g)** The award is subject to all other provisions of the Regular Track of these rules which pertain to awards.

### E-7. Date, Time, and Place of Hearing

In cases in which a hearing is to be held, the arbitrator shall set the date, time, and place of the hearing, to be scheduled to take place within 30 calendar days of confirmation of the arbitrator's appointment. The AAA will notify the parties in advance of the hearing date.

### E-8. The Hearing

**(a)** Generally, the hearing shall not exceed one day. Each party shall have equal opportunity to submit its proofs and complete its case. The arbitrator shall determine the order of the hearing, and may require further submission of documents within two business days after the hearing. For good cause shown, the arbitrator may schedule additional hearings within seven business days after the initial day of hearings.

**(b)** Generally, there will be no stenographic record. Any party desiring a stenographic record may arrange for one pursuant to the provisions of Section R-28.

### E-9. Time of Award

Unless otherwise agreed by the parties, the award shall be rendered not later than 14 calendar days from the date of the closing of the hearing or, if oral hearings have been waived, from the due date established for the receipt of the parties' final statements and proofs.

### E-10. Arbitrator's Compensation

Arbitrators will receive compensation at a rate to be suggested by the AAA regional office.

# Procedures for Large, Complex Commercial Disputes

## L-1. Administrative Conference

Prior to the dissemination of a list of potential arbitrators, the AAA shall, unless the parties agree otherwise, conduct an administrative conference with the parties and/or their attorneys or other representatives by conference call. The conference will take place within 14 calendar days after the commencement of the arbitration. In the event the parties are unable to agree on a mutually acceptable time for the conference, the AAA may contact the parties individually to discuss the issues contemplated herein. Such administrative conference shall be conducted for the following purposes and for such additional purposes as the parties or the AAA may deem appropriate:

**(a)** to obtain additional information about the nature and magnitude of the dispute and the anticipated length of hearing and scheduling;

**(b)** to discuss the views of the parties about the technical and other qualifications of the arbitrators;

**(c)** to obtain conflicts statements from the parties; and

**(d)** to consider, with the parties, whether mediation or other non-adjudicative methods of dispute resolution might be appropriate.

## L-2. Arbitrators

**(a)** Large, complex commercial cases shall be heard and determined by either one or three arbitrators, as may be agreed upon by the parties. With the exception in paragraph (b) below, if the parties are unable to agree upon the number of arbitrators and a claim or counterclaim involves at least $1,000,000, then three arbitrator(s) shall hear and determine the case. If the parties are unable to agree on the number of arbitrators and each claim and counterclaim is less than $1,000,000, then one arbitrator shall hear and determine the case.

**(b)** In cases involving the financial hardship of a party or other circumstance, the AAA at its discretion may require that only one arbitrator hear and determine the case, irrespective of the size of the claim involved in the dispute.

**(c)** The AAA shall appoint arbitrator(s) as agreed by the parties. If they are unable to agree on a method of appointment, the AAA shall appoint arbitrators from the Large, Complex Commercial Case Panel, in the manner provided in the regular Commercial Arbitration Rules. Absent agreement of the parties, the arbitrator(s) shall not have served as the mediator in the mediation phase of the instant proceeding.

## L-3. Management of Proceedings

**(a)** The arbitrator shall take such steps as deemed necessary or desirable to avoid delay and to achieve a fair, speedy and cost-effective resolution of a Large, Complex Commercial Dispute.

**(b)** As promptly as practicable after the selection of the arbitrator(s), a preliminary hearing shall be scheduled in accordance with sections P-1 and P-2 of these rules.

**(c)** The parties shall exchange copies of all exhibits they intend to submit at the hearing at least 10 calendar days prior to the hearing unless the arbitrator(s) determines otherwise.

**(d)** The parties and the arbitrator(s) shall address issues pertaining to the pre-hearing exchange and production of information in accordance with rule R-22 of the AAA Commercial Rules, and the arbitrator's determinations on such issues shall be included within the Scheduling and Procedure Order.

**(e)** The arbitrator, or any single member of the arbitration tribunal, shall be authorized to resolve any disputes concerning the pre-hearing exchange and production of documents and information by any reasonable means within his discretion, including, without limitation, the issuance of orders set forth in rules R-22 and R-23 of the AAA Commercial Rules.

**(f)** In exceptional cases, at the discretion of the arbitrator, upon good cause shown and consistent with the expedited nature of arbitration, the arbitrator may order depositions to obtain the testimony of a person who may possess information determined by the arbitrator to be relevant and material to the outcome of the case. The arbitrator may allocate the cost of taking such a deposition.

**(g)** Generally, hearings will be scheduled on consecutive days or in blocks of consecutive days in order to maximize efficiency and minimize costs.


## Administrative Fee Schedules (Standard and Flexible Fees)

*FOR THE CURRENT ADMINISTRATIVE FEE SCHEDULE, PLEASE VISIT*
**www.adr.org/feeschedule.**

## Commercial Mediation Procedures

### M-1. Agreement of Parties

Whenever, by stipulation or in their contract, the parties have provided for mediation or conciliation of existing or future disputes under the auspices of the American Arbitration Association or under these procedures, the parties and their representatives, unless agreed otherwise in writing, shall be deemed to have made these procedural guidelines, as amended and in effect as of the date of filing of a request for mediation, a part of their agreement and designate the AAA as the administrator of their mediation.

The parties by mutual agreement may vary any part of these procedures including, but not limited to, agreeing to conduct the mediation via telephone or other electronic or technical means.

### M-2. Initiation of Mediation

Any party or parties to a dispute may initiate mediation under the AAA's auspices by making a request for mediation to any of the AAA's regional offices or case management centers via telephone, email, regular mail or fax. Requests for mediation may also be filed online via WebFile at **www.adr.org.**

The party initiating the mediation shall simultaneously notify the other party or parties of the request. The initiating party shall provide the following information to the AAA and the other party or parties as applicable:

- **(i)** A copy of the mediation provision of the parties' contract or the parties' stipulation to mediate.
- **(ii)** The names, regular mail addresses, email addresses, and telephone numbers of all parties to the dispute and representatives, if any, in the mediation.
- **(iii)** A brief statement of the nature of the dispute and the relief requested.
- **(iv)** Any specific qualifications the mediator should possess.

### M-3. Representation

Subject to any applicable law, any party may be represented by persons of the party's choice. The names and addresses of such persons shall be communicated in writing to all parties and to the AAA.

## M-4. Appointment of the Mediator

If the parties have not agreed to the appointment of a mediator and have not provided any other method of appointment, the mediator shall be appointed in the following manner:

(i) Upon receipt of a request for mediation, the AAA will send to each party a list of mediators from the AAA's Panel of Mediators. The parties are encouraged to agree to a mediator from the submitted list and to advise the AAA of their agreement.

(ii) If the parties are unable to agree upon a mediator, each party shall strike unacceptable names from the list, number the remaining names in order of preference, and return the list to the AAA. If a party does not return the list within the time specified, all mediators on the list shall be deemed acceptable. From among the mediators who have been mutually approved by the parties, and in accordance with the designated order of mutual preference, the AAA shall invite a mediator to serve.

(iii) If the parties fail to agree on any of the mediators listed, or if acceptable mediators are unable to serve, or if for any other reason the appointment cannot be made from the submitted list, the AAA shall have the authority to make the appointment from among other members of the Panel of Mediators without the submission of additional lists.

## M-5. Mediator's Impartiality and Duty to Disclose

AAA mediators are required to abide by the *Model Standards of Conduct for Mediators* in effect at the time a mediator is appointed to a case. Where there is a conflict between the *Model Standards* and any provision of these Mediation Procedures, these Mediation Procedures shall govern. The Standards require mediators to (i) decline a mediation if the mediator cannot conduct it in an impartial manner, and (ii) disclose, as soon as practicable, all actual and potential conflicts of interest that are reasonably known to the mediator and could reasonably be seen as raising a question about the mediator's impartiality.

Prior to accepting an appointment, AAA mediators are required to make a reasonable inquiry to determine whether there are any facts that a reasonable individual would consider likely to create a potential or actual conflict of interest for the mediator. AAA mediators are required to disclose any circumstance likely to create a presumption of bias or prevent a resolution of the parties' dispute within the time-frame desired by the parties. Upon receipt of such disclosures, the AAA shall immediately communicate the disclosures to the parties for their comments.

The parties may, upon receiving disclosure of actual or potential conflicts of interest of the mediator, waive such conflicts and proceed with the mediation. In the event that a party disagrees as to whether the mediator shall serve, or in the event that the mediator's conflict of interest might reasonably be viewed as undermining the integrity of the mediation, the mediator shall be replaced.

### M-6. Vacancies

If any mediator shall become unwilling or unable to serve, the AAA will appoint another mediator, unless the parties agree otherwise, in accordance with section M-4.

### M-7. Duties and Responsibilities of the Mediator

(i) The mediator shall conduct the mediation based on the principle of party self-determination. Self-determination is the act of coming to a voluntary, uncoerced decision in which each party makes free and informed choices as to process and outcome.

(ii) The mediator is authorized to conduct separate or *ex parte* meetings and other communications with the parties and/or their representatives, before, during, and after any scheduled mediation conference. Such communications may be conducted via telephone, in writing, via email, online, in person or otherwise.

(iii) The parties are encouraged to exchange all documents pertinent to the relief requested. The mediator may request the exchange of memoranda on issues, including the underlying interests and the history of the parties' negotiations. Information that a party wishes to keep confidential may be sent to the mediator, as necessary, in a separate communication with the mediator.

(iv) The mediator does not have the authority to impose a settlement on the parties but will attempt to help them reach a satisfactory resolution of their dispute. Subject to the discretion of the mediator, the mediator may make oral or written recommendations for settlement to a party privately or, if the parties agree, to all parties jointly.

(v) In the event a complete settlement of all or some issues in dispute is not achieved within the scheduled mediation session(s), the mediator may continue to communicate with the parties, for a period of time, in an ongoing effort to facilitate a complete settlement.

(vi) The mediator is not a legal representative of any party and has no fiduciary duty to any party.

## M-8. Responsibilities of the Parties

The parties shall ensure that appropriate representatives of each party, having authority to consummate a settlement, attend the mediation conference.

Prior to and during the scheduled mediation conference session(s) the parties and their representatives shall, as appropriate to each party's circumstances, exercise their best efforts to prepare for and engage in a meaningful and productive mediation.

## M-9. Privacy

Mediation sessions and related mediation communications are private proceedings. The parties and their representatives may attend mediation sessions. Other persons may attend only with the permission of the parties and with the consent of the mediator.

## M-10. Confidentiality

Subject to applicable law or the parties' agreement, confidential information disclosed to a mediator by the parties or by other participants (witnesses) in the course of the mediation shall not be divulged by the mediator. The mediator shall maintain the confidentiality of all information obtained in the mediation, and all records, reports, or other documents received by a mediator while serving in that capacity shall be confidential.

The mediator shall not be compelled to divulge such records or to testify in regard to the mediation in any adversary proceeding or judicial forum.

The parties shall maintain the confidentiality of the mediation and shall not rely on, or introduce as evidence in any arbitral, judicial, or other proceeding the following, unless agreed to by the parties or required by applicable law:

   (i) Views expressed or suggestions made by a party or other participant with respect to a possible settlement of the dispute;

   (ii) Admissions made by a party or other participant in the course of the mediation proceedings;

   (iii) Proposals made or views expressed by the mediator; or

   (iv) The fact that a party had or had not indicated willingness to accept a proposal for settlement made by the mediator.

## M-11. No Stenographic Record

There shall be no stenographic record of the mediation process.

## M-12. Termination of Mediation

The mediation shall be terminated:

**(i)** By the execution of a settlement agreement by the parties; or

**(ii)** By a written or verbal declaration of the mediator to the effect that further efforts at mediation would not contribute to a resolution of the parties' dispute; or

**(iii)** By a written or verbal declaration of all parties to the effect that the mediation proceedings are terminated; or

**(iv)** When there has been no communication between the mediator and any party or party's representative for 21 days following the conclusion of the mediation conference.

## M-13. Exclusion of Liability

Neither the AAA nor any mediator is a necessary party in judicial proceedings relating to the mediation. Neither the AAA nor any mediator shall be liable to any party for any error, act or omission in connection with any mediation conducted under these procedures.

## M-14. Interpretation and Application of Procedures

The mediator shall interpret and apply these procedures insofar as they relate to the mediator's duties and responsibilities. All other procedures shall be interpreted and applied by the AAA.

## M-15. Deposits

Unless otherwise directed by the mediator, the AAA will require the parties to deposit in advance of the mediation conference such sums of money as it, in consultation with the mediator, deems necessary to cover the costs and expenses of the mediation and shall render an accounting to the parties and return any unexpended balance at the conclusion of the mediation.

### M-16. Expenses

All expenses of the mediation, including required traveling and other expenses or charges of the mediator, shall be borne equally by the parties unless they agree otherwise. The expenses of participants for either side shall be paid by the party requesting the attendance of such participants.

### M-17. Cost of the Mediation

*FOR THE CURRENT ADMINISTRATIVE FEE SCHEDULE, PLEASE VISIT* **www.adr.org/feeschedule.**

*© 2018 American Arbitration Association, Inc. All rights reserved. These rules are the copyrighted property of the American Arbitration Association (AAA) and are intended to be used in conjunction with the AAA's administrative services. Any unauthorized use or modification of these rules may violate copyright laws and other applicable laws. Please contact 800.778.7879 or websitemail@adr.org for additional information.*

## Regional Vice Presidents

**States: Delaware, District of Columbia, Maryland, New Jersey, Pennsylvania, Virginia**
P. Jean Baker, Esq.
Vice President
Phone: 202.223.7093
Email: BakerJ@adr.org

**States: Oklahoma, Texas**
Andrew Barton
Vice President
Phone: 210.998.5750
Email: BartonA@adr.org

**States: Alabama, Georgia**
John M. Bishop
Vice President
Phone: 404.320.5150
Email: BishopJ@adr.org

**States: City of Houston, Louisiana, Mississippi**
Ingeuneal C. Gray, Esq.
Vice President
Phone: 832.308.7893
Email: GrayI@adr.org

**States: Connecticut, Maine, Massachusetts, New Hampshire, Rhode Island, Vermont**
Karen Jalkut
Vice President
Phone: 617.695.6062
Email: JalkutK@adr.org

**States: Alaska, California, Hawaii, Oregon, Washington**
Serena K. Lee, Esq.
Vice President
Phone: 415.671.4053
Email: LeeS@adr.org

**States: Indiana, Kentucky, North Carolina, Ohio, South Carolina, Tennessee, West Virginia**
Michelle M. Skipper
Vice President
Phone: 704.643.8605
Email: SkipperM@adr.org

**States: Florida**
Rebecca Storrow, Ph.D.
Vice President
Phone: 954.372.4341
Email: StorrowR@adr.org

**States: Arizona, Colorado, Kansas, Idaho, Montana, Nebraska, Nevada, New Mexico, Utah, Wyoming**
Lance K. Tanaka
Vice President
Phone: 303.831.0824
Email: TanakaL@adr.org

**States: Arkansas, Illinois, Iowa, Michigan, Minnesota, Missouri, North Dakota, South Dakota, Wisconsin**
A. Kelly Turner, Esq.
Vice President
Phone: 312.361.1116
Email: TurnerK@adr.org

**States: New York**
Jeffrey T. Zaino, Esq.
Vice President
Phone: 212.484.3224
Email: ZainoJ@adr.org

## Case Management Vice Presidents and Assistant Vice President

Jeffrey Garcia
Vice President
Phone: 559.490.1860
Email: GarciaJ@adr.org
**Administers cases in: AK, AZ, CA, CO, HI, ID, MT, NV, NM, OR, UT, WA, WY**

John M. Bishop
Vice President
Phone: 404.320.5150
Email: BishopJ@adr.org
**Administers cases in: AL, DC, FL, GA, IN, KY, MD, NC, OH, SC, TN, VA**

Rod Toben
Vice President
Phone: 972.774.6923
Email: TobenR@adr.org
**Administers cases in: AR, IL, IA, KS, LA, MN, MS, MO, NE, ND, OK, SD, TX, WI**

Yvonne Baglini
Assistant Vice President
Phone: 866.293.4053
Email: BagliniY@adr.org
**Administers cases in: CT, DE, MA, ME, MI, NH, NJ, NY, PA, RI, VT, WV**



AMERICAN ARBITRATION ASSOCIATION®

800.778.7879 | websitemail@adr.org | adr.org

# EXHIBIT C



# SUPERIOR COURT OF CALIFORNIA
# COUNTY OF SAN FRANCISCO

# Document Scanning Lead Sheet

Dec-07-2018  2:38 pm

Case Number: CGC-18-567869

Filing Date: Dec-07-2018 2:37

Filed by:  WILLIAM TRUPEK

Image: 06602720

ORDER

CYNTHIA MARCIANO VS. DOORDASH INC.

001C06602720

**Instructions:**
Please place this sheet on top of the document to be scanned.

*Prepared by the court.*

THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SAN FRANCISCO

F I L E D

San Francisco County Superior Court

DEC   7 2018

CLERK OF THE COURT

BY: _____
                              Deputy Clerk

CYNTHIA MARCIANO, et al.,

                    Plaintiffs,

vs.

DOORDASH, INC.,

                    Defendant.

Case No. CGC-18-567869

**ORDER GRANTING MOTION TO STAY ACTION**

---

A welter of litigation has been filed to decide the same central issue: whether people who have worked with DoorDash, Inc. to deliver food from restaurants to consumers are independent contractors or employees. This particular action was filed under "the Labor Code Private Attorneys General Act of 2004" (Labor Code §2698 et seq.: PAGA).

DoorDash moves to stay these court proceedings and to compel arbitration. I GRANT the motion to stay for each of three reasons:

*First,* other plaintiffs (represented by the same counsel) are presently arbitrating the same independent contractor v. employee issue with DoorDash, with hearings set for early 2019. Thus, CCP §1281.4 provides that this action "shall be stayed" pending the arbitrations. (See also *Marcus v. Sup. Ct.* (1977) 75 Cal.App.3d 204, 209.)

*Second,* a PAGA action – *Marko v. DoorDash, Inc.* – that makes the same allegations seeking the same penalties for the same group of DoorDash delivery providers was first-filed in Los Angeles County Superior Court. Thus, this San Francisco PAGA action should be stayed in

1

favor of the Los Angeles PAGA action.  (See, e.g., *Alakozai v. Chase Inv. Servs. Corp.* (C.D.Cal. 3/1/12 2012 WL 748548 at 6 ("allowing the two matters to proceed simultaneously would risk inconsistent judgments and defeat efficiency").

*Third,* as recognized by Code of Civil Procedure §128, courts have inherent powers to control the proceedings before them.  Thus, I could, and would, stay this action *sua sponte* on grounds of efficiency and consistency even if not required to do so by statute.

Questions of arbitrability are DEFERRED until such time as they need to be decided, if ever.

Dated: December 7, 2018

_____
Richard B. Ulmer Jr.
Judge of the Superior Court

# SUPERIOR COURT OF CALIFORNIA
## County of San Francisco

CYNTHIA MARCIANO, et al,,

               Plaintiffs,

v.

DOORDASH, INC.,

               Defendants.

Case No. CGC-18-567869

**CERTIFICATE OF MAILING**
(CCP 1013a (4) )

I, William Trupek, a Deputy Clerk of the Superior Court of the County of San Francisco, certify that I am not a party to the within action.

On December 7, 2018, I served the attached ORDER GRANTING MOTION TO STAY ACTION, by placing a copy thereof in a sealed envelope, addressed as follows:

MICHAEL J. HOLECEK
GIBSON DUNN
333 SOUTH GRAND AVE.
LOS ANGELES, CA 90071

SHANNON LISS-RIORDAN
LICHTEN & LISS-RIORDAN, P.C.
729 BOYLSTON ST. STE 2000
BOSTON, MA 02116

JOSHUA LIPSHUTZ
GIBSON DUNN
1050 CONNECTICUT AVE. N.W.
WASHINGTON D.C. 20036

I then placed the sealed envelopes in the outgoing mail at 400 McAllister Street, San Francisco, CA. 94102 on the date indicated above for collection, attachment of required prepaid postage, and mailing on that date following standard court practices.

Dated: December 7, 2018

T. MICHAEL YUEN, Clerk

By: _____
William Trupek,
Deputy Clerk

# EXHIBIT D

1  ANDREW M. SPURCHISE, Bar No. 245998
   aspurchise@littler.com
2  LITTLER MENDELSON, P.C.
   900 Third Avenue
3  New York, NY 10022.3298
   Telephone:    212.583.9600
4  Fax No.:      212.832.2719

5  SOPHIA BEHNIA, Bar No. 289318
   sbehnia@littler.com
6  BLAIR A. COPPLE, Bar No. 313580
   bcopple@littler.com
7  LITTLER MENDELSON, P.C.
   333 Bush Street, 34th Floor
8  San Francisco, CA 94105
   Telephone:    415.433.1940
9  Fax No.:      415.399.8940

10 Attorneys for Defendant
   DOORDASH, INC.

11

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

MAY 29 2018

Sherri R. Carter, Executive Officer/Clerk
By: Benigno Del Barrio, Deputy

12                SUPERIOR COURT OF THE STATE OF CALIFORNIA

13                          COUNTY OF LOS ANGELES

14 DANIEL MARKO, BROCK BAKER, and          Case No. BC659841
   JESUS CORONA, individually and on
15 behalf of all others similarly situated,   ASSIGNED FOR ALL PURPOSES TO HON.
                                              WILLIAM HIGHBERGER – DEPT. 322
16              Plaintiffs,
                                              [PROPOSED] ORDER GRANTING IN
17     v.                                     PART DEFENDANT DOORDASH, INC.'S
                                              PETITION TO COMPEL ARBITRATION
18 DOORDASH, INC.; and DOES 1 to 50,
   inclusive,                                 Date:  March 21, 2018
19                                            Time: 9:30 a.m.
                Defendant.                    Dept.: 322 (now Dept. 10)
20
                                              Complaint Filed: May 2, 2017
21                                            FAC filed: August 15, 2017

22

23

24

25                                            **RECEIVED**
                                              LOS ANGELES SUPERIOR COURT
26
                                              APR 23 2018
27
                                              R. NAZARYAN
28

1    Defendant Doordash, Inc.'s Petition to Compel Arbitration ("Petition") was heard on March

2    21, 2018 at 9:30 a.m. in Department 322 of the Superior Court of California, County of Los Angeles.

3    All parties were represented by counsel of record. The Court, having considered the supporting and

4    opposing papers to Defendant's Petition, the papers and pleadings on file in this matter, and having

5    heard and considered the oral arguments of counsel, and good cause appearing therefrom, ORDERS

6    as follows:

7    Defendant's Petition to Compel Arbitration is GRANTED, in part.

8    As required by the Federal Arbitration Act ("FAA") and the California Code of Civil

9    Procedure sections 1281.2 and 1281.4, and in light of the arbitration agreement entered into between

10   Plaintiffs and Defendant, Plaintiffs shall arbitrate their independent contractor status and claims for

11   damages on an individual basis, rather than on a class basis, in accordance with the Independent

12   Contractor Agreement accepted by each of them. Defendant's request to enforce the class action

13   waiver as to Plaintiffs' claim for injunctive relief is DENIED without prejudice, and Plaintiffs' claim

14   for injunctive relief is STAYED pending arbitration. The Court will renew its consideration of the

15   parties' arguments as to whether Plaintiffs' claim for injunctive relief qualifies as public injunctive

16   relief pursuant to *McGill v. Citibank,* 2 Cal. 5th 945 (2017) once arbitration is complete. Plaintiffs'

17   claims for civil penalties under the Private Attorneys General Act are also hereby STAYED.

18   Further, the parties have met and conferred regarding the selection of neutral arbitrators and

19   agreed upon the following individuals: Hon. Louis M. Meisinger (Ret.), Hon. Layn R. Phillips

20   (Ret.), and Hon Margaret A. Nagle (Ret.). Each arbitrator shall be assigned to hear one Plaintiff's

21   claims.

22   A non-appearance case review is set for October 12, 2018 at 9:00 a.m. for a status report on

23   the three arbitrations, with a joint report due on October 9, 2018.

24   **IT IS SO ORDERED.**

25   Dated: _____5/29_____, 2018

26   **WILLIAM F. HIGHBERGER, JUDGE**

27   HONORABLE WILLIAM HIGHBERGER
     Judge of the Superior Court

28

LITTLER MENDELSON, P.C.
900 Third Avenue
New York, NY 10022.3298
212.583.9600

2.                                                    Case No. BC659841

[PROPOSED] ORDER GRANTING IN PART DEFENDANT'S PETITION TO COMPEL ARBITRATION

# EXHIBIT E



1

2

3

4

5

6

7

8                    SUPERIOR COURT OF CALIFORNIA

9                        COUNTY OF SANTA CLARA

10

11

12   DOORDASH, INC.,                    |   Case No.   2015-1-CV-287843

13                     Petitioner,      |

14   vs.                                |   ORDER RE: PETITION TO COMPEL
                                        |   ARBITRATION OF DLSE
15                                      |   COMPLAINT AND STAY DLSE
                                        |   PROCEEDINGS
16   CYNTHIA MARCIANO, et al.,          |

17                     Respondents,     |

18

19

20        The petition by DoorDash, Inc. to compel arbitration of respondent Cynthia Marciano's

21   DLSE complaint and stay the DLSE proceedings came on for hearing before the Honorable Beth

22   McGowen on February 4, 2016, at 9:00 a.m. in Department 7. The matter having been submitted,

23   the Court finds and orders as follows:

24        Currently before the Court is the petition by DoorDash, Inc. ("DoorDash") to compel

25   arbitration of the California Department of Industrial Relations, Division of Labor Standards

26   Enforcement ("DLSE") complaint filed by respondent Cynthia Marciano ("Marciano") and stay

27   the DLSE proceedings.

28

1

ORDER RE: PETITION TO COMPEL ARBITRATION OF DLSE COMPLAINT AND STAY DLSE PROCEEDINGS

1    After the filing of the petition, DoorDash, Marciano, and respondent Julie Su in her

2    capacity as California Labor Commissioner ("Labor Commissioner") agreed to take the DLSE

3    hearing off calendar and postpone the matter pending the Court's ruling on the petition.

4    Marciano and the Labor Commissioner filed papers in opposition to the petition on

5    January 22, 2016. DoorDash filed its reply on January 28, 2016.

6    DoorDash's petition was heard on February 4, 2016. After the parties' presentation of

7    oral argument, the Court took the matter under submission.

8    **Discussion**

9    DoorDash seeks to compel arbitration of the DLSE complaint, arguing that the Federal

10    Arbitration Act (9 U.S.C. § 1 et seq.) ("FAA") governs the agreement; the incorporation of the

11    American Arbitration Association ("AAA") commercial rules delegates issues, such as the

12    gateway issue of arbitrability and the issue of enforceability, to the arbitrator; even if such issues

13    were to be decided by the Court, Marciano agreed to arbitrate the claims raised in the DLSE

14    complaint and the arbitration agreement is valid; and the arbitration agreement is not

15    procedurally or substantively unconscionable.

16    Marciano opposes the petition, arguing that the incorporation of the AAA commercial

17    rules does not constitute a clear and unmistakable delegation of the issues of arbitrability and

18    enforceability to the arbitrator because the Independent Contract Agreement contains

19    inconsistent provisions; the arbitration provision is unenforceable because it contains a non-

20    severable Private Attorneys General Act of 2004 ("PAGA") waiver; and the arbitration provision

21    is procedurally and substantively unconscionable.

22    The Labor Commissioner also opposes the petition, arguing that the arbitration agreement

23    does not cover the claims alleged in the DLSE complaint; the delegation of issues to the

24    arbitrator is unconscionable because, if enforced, it deprives the Labor Commissioner of

25    jurisdiction without providing the right of intervention; and the arbitration provision is

26    procedurally and substantively unconscionable because it contains a Berman waiver and other

27    unconscionable terms.

28

2

ORDER RE:  PETITION TO COMPEL ARBITRATION OF DLSE COMPLAINT AND STAY DLSE PROCEEDINGS

## I.      Procedural Issue

As an initial matter, DoorDash asserts that Marciano failed to timely serve it with her opposition papers and, consequently, the Court should reject her opposition as untimely. DoorDash does not appear to have suffered any prejudice as a result of the defective service as it admits that it eventually received a copy of the opposition and filed a substantive reply addressing the issues raised therein. Given the absence of prejudice and in the interest of addressing the matter on its merits, the Court will overlook the defective service and consider Marciano's opposition.

## II.     Legal Standard

"Strong public policies favor enforcement of agreements to arbitrate disputes. Under the California Arbitration Act (Code Civ. Proc., § 1280 et seq. (CAA)), '[o]n petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party to the agreement refuses to arbitrate such controversy, the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists....' (Code Civ. Proc., § 1281.2.) Under that provision, the court shall order arbitration of any dispute that it determines is within the parties' arbitration agreement unless the right to compel arbitration has been waived or the agreement is otherwise unenforceable. (Code Civ. Proc., § 1281.2.) Under both the CAA and the [FAA], arbitration agreements are 'valid, irrevocable, and enforceable, save upon such grounds as exist at law or equity for the revocation of any contract.' [Citations.]" (*Garcia v. Super. Ct.* (2015) 236 Cal.App.4th 1138, 1144 ("*Garcia*").)

"With respect to agreements to which the FAA applies, the federal policy favoring arbitration preempts any state-law impediments to the policy's fulfillment. If a state law interferes with the FAA's purpose of enforcing arbitration agreements according to their terms, the FAA preempts the state-law provision, no matter how laudable the state law's objectives. [Citations.] Under the supremacy clause of the United States Constitution (art. VI, cl. 2), the FAA requires any conflicting state law to give way. [Citations.]" (*Garcia, supra,* 236 Cal.App.4th at p. 1144.)

ORDER RE: PETITION TO COMPEL ARBITRATION OF DLSE COMPLAINT AND STAY DLSE PROCEEDINGS

1   "Code of Civil Procedure sections 1281.2 and 1290.2 provide for summary proceedings

2   in the trial court to resolve petitions to compel arbitration, in which the trial court sits as a trier-

3   of-fact, weighing documentary evidence and any oral testimony that the court may hear in its

4   discretion. [Citations.] In such proceedings the petitioner bears the burden of proving the

5   existence of a valid arbitration agreement by a preponderance of the evidence, while a party

6   opposing the petition bears the burden of proving any fact necessary to its defense. [Citation.]"

7   (*Garcia, supra*, 236 Cal.App.4th at p. 1145.)

8   **III.    Applicable Law**

9        DoorDash argues that the FAA governs the interpretation and application of the

10  arbitration provision because the Independent Contractor Agreement involves commerce and the

11  use of its mobile application; its mobile platform is available across the country; and material

12  posted on the internet (and by extension a mobile application) crosses state lines. In opposition,

13  Marciano and the Labor Commissioner do not dispute that the FAA applies to the agreement at

14  issue. Accordingly, the Court finds that the FAA governs the interpretation and application of the

15  agreement.

16  **IV.    Delegation of Issues to the Arbitrator**

17       As a threshold matter, the Court must first determine whether, under the terms of the

18  parties' agreement, it or an arbitrator decides the gateway issues of whether there is an agreement

19  to arbitrate between Marciano and DoorDash and whether that agreement covers the dispute

20  raised in the DLSE complaint.

21       DoorDash argues that the arbitration provision delegates these gateway issues to the

22  arbitrator because it incorporates the AAA commercial rules and the majority of courts to

23  consider the issue have held that the incorporation of the AAA commercial rules is a clear and

24  unmistakable delegation. DoorDash also contends that when considering whether the parties

25  clearly and unmistakably delegated the issue of arbitrability to the arbitrator, the Court can only

26  look at the arbitration provision itself and its delegation clause. DoorDash asserts that the Court

27  may not consider other provisions and/or sections of the Independent Contractor Agreement.

28

ORDER RE: PETITION TO COMPEL ARBITRATION OF DLSE COMPLAINT AND STAY DLSE PROCEEDINGS

1    In opposition, Marciano argues that the incorporation of the AAA commercial rules is not

2  a clear and unmistakable delegation of issues to the arbitrator because there is a conflicting

3  provision in the Independent Contractor Agreement, i.e., the severability provision, which

4  indicates that a court should determine whether the agreement is valid and enforceable.

5    Under the FAA, the enforceability of an arbitration agreement is ordinarily to be

6  determined by the court. (*Ajamian v. CantorCO2e, L.P.* (2012) 203 Cal.App.4th 771, 781

7  ("*Ajamian*").)

8    Nonetheless, the parties may agree in the arbitration provision that questions of

9  arbitrability and/or enforceability will be delegated to the arbitrator. (E.g., *AT & T Technologies*

10  *v. Communications Workers* (1986) 475 U.S. 643, 649.) To establish this exception, it must be

11  shown by "clear and unmistakable" evidence that the parties intended to delegate the issue to the

12  arbitrator. (*First Options of Chicago, Inc. v. Kaplan* (1995) 514 U.S. 938, 944 ("*First Options*");

13  *Rent-A-Center, West, Inc. v. Jackson* (2010) 561 U.S. 63, 69, fn. 1 ("*Rent-A-Center*") ["

14  '[u]nless the parties clearly and unmistakably provide otherwise, the question of whether the

15  parties agreed to arbitrate is to be decided by the court, not the arbitrator' "].) The "clear and

16  unmistakable" test reflects a "heightened standard" of proof. (*Rent–A–Center, supra,* 561 U.S. at

17  p. 69, fn. 1.)  The default expectancy is that the court would decide the matter, because the

18  question of who would decide the unconscionability of an arbitration provision is not one that the

19  parties would likely focus upon in contracting. (*First Options, supra,* 514 U.S. at pp. 943–945.)

20  Thus, the United States Supreme Court has decreed, a contract's silence or ambiguity about the

21  arbitrator's power in this regard cannot satisfy the clear and unmistakable evidence standard. (*Id.*

22  at pp. 943–945.)

23    The vast majority of courts to consider the issue have held that incorporation of the rules

24  of an arbitration service (such as the AAA commercial rules)—when there are no inconsistent

25  terms in the agreement—is sufficient to show that the parties clearly and unmistakably delegated

26  authority to the arbitrator. (*Oracle America, Inc. v. Myriad Group A.G.* (9th Cir. 2013) 724 F.3d

27  1069, 1074 ["[v]irtually every circuit to have considered the issue has determined that

28  incorporation of the [AAA's] arbitration rules constitutes clear and unmistakable evidence that

5

ORDER RE: PETITION TO COMPEL ARBITRATION OF DLSE COMPLAINT AND STAY DLSE PROCEEDINGS

1    the parties agreed to arbitrate arbitrability"]; see e.g., *Contec Corp. v. Remote Solution Co.* (2d

2    Cir.2005) 398 F.3d 205, 208 ["[W]hen ... parties explicitly incorporate rules that empower an

3    arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable

4    evidence of the parties' intent to delegate such issues to an arbitrator."]; *Terminix International*

5    *v. Palmer Ranch Ltd. Partnership* (11th Cir.2005) 432 F.3d 1327, 1332 [incorporation of AAA

6    rules for commercial arbitration showed that the parties had clearly and unmistakably agreed that

7    the arbitrator should decide whether the arbitration clause was valid]; *Awuah v. Coverall N.Am.,*

8    *Inc.* (1st Cir.2009) 554 F.3d 7, 10–12 [incorporation of AAA rules constitutes clear and

9    unmistakable evidence of parties' intent]; *Fallo v. High–Tech Inst.* (8th Cir.2009) 559 F.3d 874,

10   877–878 ("*Fallo*") [same]; *Clarium Capital Management LLC v. Choudhury* (N.D.Cal. Feb. 10,

11   2009) 2009 WL 331588 at *5–6 [incorporation of AAA rules in arbitration agreement is clear

12   and unmistakable evidence of the parties' intent to delegate the issue of arbitrability to the

13   arbitrator]; *Zenelaj v. Handybook, Inc.* (N.D. Cal. 2015) 82 F.Supp. 3d 968, 971-972

14   [incorporation of AAA rules into agreement effectively delegated jurisdictional questions,

15   including arbitrability and validity, to arbitrator]; *Rodriguez v. American Technologies, Inc.*

16   (2006) 136 Cal.App.4th 1110, 1123 [parties clearly and unmistakably agreed to have the

17   arbitrator determine the scope of the clause, where the contract mandated arbitration in

18   accordance with AAA construction arbitration rules]; *Dream Theater, Inc. v. Dream Theater*

19   (2004) 124 Cal.App.4th 547, 550 [parties' contract stated arbitration would be conducted in

20   accordance with AAA commercial arbitration rules, which provided that the arbitrator would

21   have the power to rule on his or her own jurisdiction].)

22        However, in those cases, there were no conflicting provisions anywhere in the subject

23   agreements or the conflicting provisions were within the arbitration agreements themselves. The

24   only case cited by the parties that presents a situation where conflicting terms were outside the

25   arbitration provision is *Ajamian*.

26        In *Ajamian*, the arbitration provision in the worker's employment agreement referred to

27   the AAA employment rules. (*Ajamian, supra,* 203 Cal.App.4th at p. 776.) The Court of Appeal

28   held that even if the reference to AAA rules evinced an intent to delegate the unconscionability

1   issue to the arbitrator, there were other provisions of the employment agreement, outside the

2   arbitration provision, that created an ambiguity rendering the totality of the evidence on the issue

3   neither clear nor unmistakable. (*Id.*, at pp. 791-792 ["where one contractual provision indicates

4   that the enforceability of an arbitration provision is to be decided by the arbitrator, but another

5   provision indicates that the court might also find provisions in the contract unenforceable, there

6   is no clear and unmistakable delegation of authority to the arbitrator"].) Thus, under *Ajamian*, if

7   there is any contractual provision in the Independent Contractor Agreement that indicates that a

8   court is to decide issues of arbitrability and/or enforceability, *even if the provision is outside the*

9   *arbitration agreement itself*, there is no clear and unmistakable delegation of authority to the

10  arbitrator.

11          DoorDash failed to address *Ajamian* in its papers and at oral argument. Furthermore, the

12  majority of the cases DoorDash relies upon do not support its argument that the Court may not

13  consider inconsistent provisions in the Independent Contractor Agreement that are outside of the

14  arbitration provision.

15          In *Hill v. Anheuser-Busch InBev Worldwide, Inc.* (C.D. Cal., Nov. 26, 2014,

16  CV146289PSGVBKX) 2014 WL 10100283 ("*Hill*"), the court found that the purportedly

17  contradictory provision was not actually inconsistent with the arbitration provision with respect

18  to the issue of arbitrability. (*Id.*, at *4.) Thus, the question of whether the court could consider

19  inconsistent provisions that were outside of the arbitration agreement was not before the court.

20          Next, the United States Supreme Court in *Rent-A-Center* observed that the respondent *did*

21  *not dispute* that the text of the agreement clearly and unmistakably gave the arbitrator exclusive

22  authority to decide whether the agreement to arbitrate was enforceable. (*Rent–A–Center, supra,*

23  561 U.S. at p. 69, fn. 1.) Thus, the sufficiency of the purported delegation language and whether

24  it was proper to consider inconsistent terms outside of the arbitration agreement was not before

25  the court. (*Ajamian, supra,* 203 Cal.App.4th at p. 784.) *Rent-A-Center* merely stands for the

26  proposition that "a party's challenge to another provision of the contract, or to the contract as a

27  whole, does not prevent a court from enforcing a specific agreement to arbitrate." (*Rent-A-*

28  *Center, supra,* 561 U.S. at p. 70.) Here, Marciano is challenging only the arbitration and its

1    delegation clause, as opposed to some other provision, and *Rent-A-Center* does not state that in

2    doing, so she cannot point out inconsistent terms in the larger Independent Contractor

3    Agreement.

4         Additionally, *Buckeye Check Cashing, Inc. v. Cardegna* (2006) 546 U.S. 440, 446 simply

5    reiterates the principle set forth in *Rent-A-Center*.

6         Finally, the remaining case cited by DoorDash—*Fallo*—is actually consistent with

7    *Ajamian* and supports the position that the Court may consider provisions and/or sections of the

8    Independent Contractor Agreement that are outside of the arbitration provision itself. In *Fallo*,

9    students sued their former school for breach of their enrollment agreements. (*Fallo, supra*, 559

10   F.3d at p. 876.) The enrollment agreements contained an arbitration clause incorporating the

11   AAA commercial rules and "a separate provision concerning governing law." (*Ibid.*) On appeal,

12   the students argued that the governing law provision conflicted with the arbitration provision,

13   thereby undermining the trial court's conclusion that the parties intended to authorize an

14   arbitrator to determine the question of arbitrability. (*Id.*, at p. 879.) The Court of Appeal did not

15   disregard the students' argument because the governing law provision was separate from and

16   outside of the arbitration provision. Rather, the court considered whether the governing law

17   provision was in fact inconsistent with the arbitration provision's delegation of authority to the

18   arbitrator and concluded that it was not. (*Ibid.*) Accordingly, *Fallo* hurts rather than helps

19   DoorDash.

20        For these reasons, the Court will follow *Ajamian* and determine whether there are any

21   provisions in the Independent Contractor Agreement that are inconsistent with the delegation of

22   authority to the arbitrator.

23        As Marciano persuasively argues, the severability provision in the Independent

24   Contractor Agreement creates an ambiguity regarding whether the parties clearly and

25   unmistakably intended to delegate the issues of arbitrability and enforceability to the arbitrator.

26   The severability provision states that "[i]f *a court finds that any provision of this Agreement is*

27   *invalid or unenforceable*, but that by limiting such provision it would become valid and

28   enforceable, then such provision shall be deemed to be written, construed and enforced as so

8

1    limited." (Munday Dec., Ex. A, emphasis added.) Thus, the Independent Contractor Agreement

2    anticipates that a court will have authority to rule on the validity and enforceability of the parties'

3    covenants. (See *Ajamian, supra,* 203 Cal.App.4th at p. 792.)

4         Accordingly, DoorDash fails to establish that the parties intended to delegate to the

5    arbitrator the exclusive authority to determine the issues of arbitrability and enforceability.

6         Since there is no clear and unmistakable delegation of authority to the arbitrator, the

7    Court need not address the Labor Commissioner's argument that the delegation clause itself is

8    unconscionable.

9         The Court now turns to the issues of whether there is an agreement to arbitrate between

10   Marciano and DoorDash and whether that agreement covers the dispute raised in the DLSE

11   complaint.

12   **V.    Agreement to Arbitrate and Scope of the Agreement**

13        Marciano and the Labor Commissioner do not dispute that the Independent Contractor

14   Agreement contains an agreement to arbitrate and Marciano was a party to that agreement.

15        Instead, the Labor Commissioner alone argues that the arbitration provision does not

16   cover the Labor Code claims asserted in the DLSE complaint. (Opp'n., p. 3.) The Labor

17   Commissioner contends that this case is analogous to *Elijahjuan v. Super. Ct.* (2012) 210

18   Cal.App.4th 15, 21 ("*Elijahjuan*"), wherein the Court of Appeal held that truck drivers who were

19   allegedly misclassified as independent contractors could not be compelled to arbitrate their Labor

20   Code claims because the arbitration clause limited arbitrable claims to those concerning the

21   "application or interpretation" of the contract.

22        The Labor Commissioner's argument lacks merit. As DoorDash persuasively argues, the

23   arbitration provision at issue in this case is broader than the one in *Elijahjuan* and is not limited

24   to claims related to the application or interpretation of the agreement. Rather, the arbitration

25   provision provides that "Contractor and Company agree that final and binding arbitration will be

26   the exclusive means of resolving *any disputes between Contractor and Company.*" (Munday

27   Dec., Ex. A, emphasis added.) This broad language unambiguously covers Marciano's Labor

28   Code claims.

9

1    Since DoorDash meets its burden to establish the existence of the arbitration agreement

2    and that the dispute is covered by the agreement, the burden shifts to Marciano and the Labor

3    Commissioner to prove, by a preponderance of evidence, a ground for denial of arbitration, such

4    as waiver or unconscionability. (See *Rosenthal v. Great Western Fin'l Securities Corp.* (1996) 14

5    Cal.4th 394, 413; see also *Cinel v. Barna* (2012) 206 Cal.App.4th 1383, 1389.)

6    **VI.   PAGA Waiver**

7    Marciano argues that the arbitration provision at issue includes a non-severable PAGA

8    waiver and, consequently, under *Iskanian v. CLS Transportation of Los Angeles* (2014) 59

9    Cal.4th 348 ("*Iskanian*"), *Sakkab v. Luxottica Retail N. Am., Inc.* (9th Cir. 2015) 803 F.3d 425

10    ("*Sakkab*"), *O'Connor v. Uber Techs., Inc.* (N.D. Cal. 2015) 311 F.R.D. 547, 557 ("*O'Connor*"),

11    *Securitas Sec. Servs. USA, Inc. v. Super. Ct. of San Diego Cty.* (2015) 234 Cal.App.4th 1109

12    ("*Securitas*"), *Mohamed v. Uber Techs., Inc.* (N.D. Cal. 2015) 2015 WL 3749716 ("*Mohamed*"),

13    and *Thomas v. Aetna Health of California, Inc.* (E.D. Cal. June 2, 2011) 2011 WL 2173715

14    ("*Thomas*"), the arbitration agreement as a whole is unenforceable on public policy grounds.[1]

15    Marciano contends that since the arbitration provision states that "Contractor and Company

16    agree to bring any disputes in arbitration on an individual basis only" and there is no such thing

17    as individual claims for PAGA penalties, the arbitration provision effectively bars PAGA claims.

18    Conversely, DoorDash argues that the arbitration provision does not include a waiver of

19    PAGA claims because it merely provides for the waiver of class and collective actions and a

20    PAGA claim is a representative action. DoorDash further argues that the arbitration provision

21    does not include a PAGA waiver because it only covers disputes between it and Marciano and a

22    PAGA claim is a dispute between the state and the alleged employer, rather than the worker and

23    the alleged employer.

24    In *Iskanian,* the California Supreme Court held that "an arbitration agreement requiring

25    an employee as a condition of employment to give up the right to bring representative PAGA

26    actions in any forum is contrary to public policy." (*Iskanian, supra,* 59 Cal.4th at p. 360.) The

27

28      [1] PAGA authorizes an employee to bring an action for civil penalties on behalf of the state against his or her employer for Labor Code violations committed against the employee and fellow employees, with most of the proceeds of that litigation going to the state. (*Iskanian, supra,* 59 Cal.4th at p. 360.)

ORDER RE: PETITION TO COMPEL ARBITRATION OF DLSE COMPLAINT AND STAY DLSE PROCEEDINGS

1  court further concluded that the FAA does not preempt state law prohibiting waiver of PAGA

2  representative actions in an employment contract. (*Ibid.*; see also *Sakkab, supra,* 803 F.3d at p.

3  439 [concluding that the FAA does not preempt the *Iskanian* rule].)

4        Furthermore, when the provision of the subject contract waiving representative claims

5  under PAGA is not severable from contract's arbitration provision, the entire arbitration

6  provision was unenforceable. (*O'Connor, supra,* 311 F.R.D. at pp. 557-563; *Securitas, supra,*

7  234 Cal.App.4th at p. 1127.)

8        The Court finds that the arbitration provision in the Independent Contractor Agreement

9  does not include a PAGA waiver. The arbitration provision states: "Contractor and Company

10  agree that final and binding arbitration will be the exclusive means of resolving any disputes

11  *between Contractor and Company* … Contractor and Company agree to bring *any disputes in*

12  *arbitration* on an individual basis only and *not as a class or other collective action basis*

13  Accordingly, there will be no right or authority for any dispute to be brought, heard or arbitrated

14  *as a class or other collective action* [.]"  (Munday Dec., Ex. A, emphasis added.)

15        It is readily apparent that the arbitration provision makes no reference whatsoever to

16  representative claims, such as PAGA actions. For this reason, this case is distinguishable from

17  the cases cited by Marciano. (See *O'Connor, supra,* 311 F.R.D. at p.  557 ["You and Uber agree

18  to resolve any disputes in arbitration on an individual basis only, and not on a class, collective, or

19  *private attorney general representative action basis.*"] [emphasis added]; *Securitas, supra,* 234

20  Cal.App.4th at p. 1114 ["[T]here will be no right or authority for any dispute to be brought,

21  heard or arbitrated as a class, collective or *representative action* ('Class Action Waiver')."]

22  [emphasis added]; *Mohamed, supra,* 109 F.Supp.3d at p. 1218 ["You and Uber agree to bring

23  any dispute in arbitration on an individual basis only, and not on a class, collective, or *private*

24  *attorney general representative action basis.*"] [emphasis added].)

25        Moreover, as DoorDash points out, the arbitration provision is expressly limited in scope

26  to agreements between it and Marciano. Since a PAGA claim belongs to the State of California,

27  and not to Marciano, the language in the provision stating that Maricano may only bring

28  individual claims simply does not prevent her from bringing a representative PAGA action in

1   court. (See *Cobarruviaz v. Maplebear, Inc.* (N.D. Cal., Nov. 3, 2015, 15-CV-00697-EMC) 2015

2   WL 6694112 *11.)

3          Accordingly, the Court finds that Maricano's PAGA waiver argument lacks merit.

4   **VII.   Unconscionability**

5          Maricano and the Labor Commissioner argue that the arbitration provision is

6   unconscionable for several reasons, both procedural and substantive.

7          **A.     Doctrine of Unconscionability**

8          In *Sanchez v. Valencia Holding Co., LLC* (2015) 61 Cal.4th 899 ("*Sanchez*"), the

9   California Supreme Court clarified the rules applicable to the unconscionability defense in a

10  factually similar case involving an automobile sales contract. The court described the general

11  principles of the doctrine of unconscionability as follows:

12         One common formulation of unconscionability is that it refers to an absence of

13         meaningful choice on the part of one of the parties together with contract terms

14         which are unreasonably favorable to the other party. As that formulation

15         implicitly recognizes, the doctrine of unconscionability has both a procedural and

16         a substantive element, the former focusing on oppression or surprise due to

17         unequal bargaining power, the latter on overly harsh and one-sided results. The

18         prevailing view is that [procedural and substantive unconscionability] must both

19         be present in order for a court to exercise its discretion to refuse to enforce a

20         contract or clause under the doctrine of unconscionability. But they need not be

21         present in the same degree. Essentially a sliding scale is invoked which disregards

22         the regularity of the procedural process of the contract formation, that creates the

23         terms, in proportion to the greater harshness or unreasonableness of the

24         substantive terms themselves. In other words, the more substantively oppressive

25         the contract term, the less evidence of procedural unconscionability is requires to

26         come to the conclusion that the term is unenforceable and vice versa.

27         (*Sanchez, supra,* 61 Cal.4th at p. 910.)

28

ORDER RE: PETITION TO COMPEL ARBITRATION OF DLSE COMPLAINT AND STAY DLSE PROCEEDINGS

1    The unconscionability defense is a matter of California contract law and is not preempted

2    by federal law unless it disfavors arbitration by imposing procedural requirements that interfere

3    with the fundamental attributes of arbitration. (*Sanchez, supra,* 61 Cal.4th at p. 913.)

4    **B.    Procedural Unconscionability**

5    "Procedural unconscionability concerns the manner in which the contract was negotiated

6    and the circumstances of the parties at that time. It focuses on factors of oppression and surprise.

7    The oppression component arises from an inequality of bargaining power of the parties to the

8    contract and an absence of real negotiation or a meaningful choice on the part of the weaker

9    party." (*Kinney v. United HealthCare Services, Inc.* (1999) 70 Cal.App.4th 1322, 1329, internal

10   citations omitted.)

11   Marciano argues that the arbitration provision is procedurally unconscionable because

12   she was not given the opportunity to negotiate any of the terms of the contract (i.e., the

13   Independent Contractor Agreement was an adhesion contract); there is no opt-out clause

14   allowing her to exclude herself from the arbitration provision; and DoorDash did not provide her

15   with a copy of the applicable arbitral rules.

16   Conversely, DoorDash contends that Marciano cannot establish procedural

17   unconscionability because a contract of adhesion is not per se unconscionable, Marciano was

18   provided to a period of time to review the Independent Contractor Agreement and review it with

19   others, her subjective belief that it was non-negotiable is irrelevant, she does not provide

20   evidence showing that she lacked alternative means of making money, and attaching the AAA

21   rules was not required.

22   An adhesion contract is " 'a standardized contract, which, imposed and drafted by the

23   party of superior bargaining strength, relegates to the subscribing party only the opportunity to

24   adhere to the contract or reject it.' " (*Morris v. Redwood Empire Bancorp* (2005) 128

25   Cal.App.4th 1305, 1319 ("*Morris*").) "Although adhesion contracts often are procedurally

26   oppressive, this is not always the case. [Citation.] Oppression refers not only to an absence of

27   power to negotiate the terms of a contract, but also to the absence of reasonable market

28   alternatives." (*Id.*, at p. 1320.)

1       Here, while Marciano asserts in a conclusory manner that she "was not allowed to

2  negotiate the terms of the agreement, including the arbitration provision" (Marciano Dec., ¶ 4),

3  she does provide any facts demonstrating that she was actually precluded from negotiating the

4  terms of the agreement. Notably, Marciano does not declare that a DoorDash representative told

5  her that the terms were non-negotiable, she asked or otherwise sought to negotiate the terms of

6  the agreement and was told she could not, or that DoorDash through its statements and/or

7  conduct represented to her that the Independent Contractor Agreement was "take it or leave it."

8  Therefore, Maricano fails to establish that the Independent Contractor Agreement was adhesive

9  and she could not negotiate its terms or otherwise opt-out of the arbitration provision.

10       Moreover, recent legal authority holds the failure to attach a copy of AAA rules is not

11  procedurally unconscionable. (See *Lane v. Francis Capital Management LLC* (2014) 224

12  Cal.App.4th 676, 691–692.)

13       For these reasons, Maricano fails to demonstrate that the arbitration provision is

14  procedurally unconscionable. Since Maricano must establish both procedurally and substantive

15  unconscionability, she fails to show that the Independent Contractor Agreement is

16  unconscionable.

17  **VIII.  Conclusion**

18       In sum, the Court finds that Marciano fails to meet her burden and the DLSE complaint is

19  subject to arbitration.

20       Accordingly, DoorDash's petition to compel arbitration is GRANTED.

21

22

23

24  March 21, 2016

25

26                          Beth McGowen

27                          Judge of the Superior Court

28

ORDER RE:  PETITION TO COMPEL ARBITRATION OF DLSE COMPLAINT AND STAY DLSE PROCEEDINGS

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA
### 191 N. First Street
### San Jose, CA  95113-1090

TO:   Galen M Lichtenstein
      Littler Mendelson, APC
      333 Bush Street, 34th Floor
      San Francisco, CA  94104



(ENDORSED)
FILED
MAR 2 1 2016
DAVID H. YAMASAKI
Chief Executive Officer/Clerk
Superior Court of CA, County of Santa Clara
By_____Deputy
    Gorette Ramos

RE:  Doordash, Inc.Vs C. Marciano, Et Al
Case Nbr:  1-15-CV-287843

### PROOF OF SERVICE

ORDER RE: PETITION TO COMPEL ARBITRATION OF DLSE COMPLAINT AND STAY DLSE
PROCEEDINGS

was delivered to the parties listed below in the above entitled case as set
forth in the sworn declaration below.

Parties/Attorneys of Record:

CC: Jessica L. Fry , Division Of Labor Standards Enf.
       100 Paseo De San Antonio, Suite 120, San Jose, CA 95113

If you, a party represented by you, or a witness to be called on behalf of that party need an accommodation under the American with
Disabilities Act, please contact the Court Administrator's office at (408)882-2700, or use the Court's TDD line, (408)882-2690 or
the Voice/TDD California Relay Service, (800)735-2922.

DECLARATION OF SERVICE BY MAIL: I declare that I served this notice by enclosing a true copy in a sealed envelope, addressed to each
person whose name is shown above, and by depositing the envelope with postage fully prepaid, in the United States Mail at
San Jose, CA on 03/21/16.  DAVID H. YAMASAKI, Chief Executive Officer/Clerk by Gorette Ramos, Deputy