IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JAMIE WEBB and AARON HODGE,
on behalf of themselves and all
others similarly situated,

    Plaintiffs,

v.

DOORDASH, INC.,

    Defendant.

CIVIL ACTION FILE
No. 1:19-cv-0665-SCJ

## ORDER

This matter is before the Court on Defendant's Motion to Compel Arbitration (Doc. No. [26]). The matter is now ripe for review by the Court.

## I.    BACKGROUND

Defendant DoorDash is a technology company headquartered in San Francisco, California. Doc. No. [26-1], p. 10. Defendant provides an online platform (including a website and a mobile application) where customers can order food delivery from a broad array of partner restaurants. Id. at 10–11. Independent contractors (called "Dashers") then receive delivery opportunities

1

via the mobile application to deliver the food to the customer. Id. at 11. Plaintiffs signed up to work as Dashers and entered into independent contractor agreements ("ICAs") with Defendant. Id. Plaintiffs bring this action on behalf of themselves and all others similarly situated: Dashers who have allegedly been denied tip money paid by customers. Doc. No. [24], p. 1.

Defendant now moves to compel arbitration of Plaintiffs' individual claims and dismiss this action. See Doc. Nos. [26]; [26-1]. Defendant argues that the arbitration agreement clause and class action waiver in the ICAs are valid and enforceable. Doc. No. [26-1], p. 1. Thus, it argues Plaintiffs are required to arbitrate their claims individually. Id.

Plaintiffs concede that the ICAs are valid contracts. Doc. No. [24], p. 27. Plaintiffs argue, however, that the Federal Arbitration Act ("FAA") is inapplicable here, because Dashers fall within a statutory exemption for transportation workers engaged in interstate commerce. Doc. No. [28], p. 6. They also argue that, even if they do not fall within the exemption, "there was no agreement to arbitrate because Plaintiffs were fraudulently induced to enter into the arbitration agreement itself." Id. Finally, Plaintiffs argue that Defendant's class action waiver argument is premature, because "the alleged class waivers are embedded within the arbitration provisions," and thus this

2

issue "requires a conclusion that each Plaintiff entered a binding arbitration agreement." Doc. No. [28], pp. 29–20.

## A. Independent Contractor Agreement ("ICA")

In July 2017 and November 2018, respectively, Webb and Hodge entered into ICAs with Defendant when they signed up to create accounts with the DoorDash platform. Id. p. 11. The sign-up screen provided a box that the user had to check to proceed, which stated "I agree to the Independent Contractor Agreement and have read the Dasher Privacy Policy." Id. The words "Independent Contractor Agreement" and "Dasher Privacy Policy" were highlighted in red text and hyperlinked to the ICA and Dasher Privacy Policy so that the user could review those documents before indicating his or her agreement. Id. In order to create a DoorDash account, the user had to click the box to indicate his or her agreement to the ICA. Id.

Section XI.1 of both Plaintiffs' ICAs contains a mutual arbitration agreement providing that the parties will arbitrate any justiciable disputes, including those related to the ICA or the parties' relationship. Id. at 12; Doc. Nos. [24-1], p. 5 (Webb's ICA); [24-2], p. 6 (Hodge's ICA). The provision states that "[t]his arbitration agreement is governed by the Federal Arbitration Act (9 U.S.C. §§ 1–16)," which shall apply to "any and all claims arising out of or

relating to this agreement." Id. The parties also agreed that the FAA shall govern "even in the event CONTRACTOR and/or DOORDASH are otherwise exempt from the FAA," and "[a]ny disputes to this regard shall be resolved exclusively by an arbitrator." Doc. Nos. [24-1], p. 6; [24-2], pp. 6–7. The first page of the ICA contains bold, capitalized text putting the reader on notice of the arbitration agreement and directing him or her to read it carefully. Id.; Doc. Nos. [24-1], p. 1; [24-2], p. 1.

The ICAs also include the option to opt-out of the arbitration agreement provision. See "CONTRATOR'S Right to Opt Out of Arbitration Provision," Doc. Nos. [24-1], p. 6; [24-2], p. 8. This provision appears in bold, underlined text, and states that a Dasher may opt-out by sending an email to dasheroptout@doordash.com within 30 days of the effective date of the ICA. Id. The provision further states that a Dasher will not be subject to an adverse action as a consequence of opting out. Id. It is uncontested that Plaintiffs did not exercise this opt-out option.

The ICAs also contain class action waivers. Section XI.3 provides that the parties "waive their right to have any dispute or claim brought, heard or arbitrated as, or to participate in, a class action, collective action, and/or representative action, and an arbitrator shall not have any authority to hear or

arbitrate any class, collective [and/or] representative action ('Class Action Waiver')." Doc. Nos. [24-1], p. 6; [24-2], p. 7. The parties agreed that "any claim that all or part of this Class Action Waiver is unenforceable, unconscionable, void or voidable may be determined only by a court of competent jurisdiction and not by an arbitrator." Id. The provision then clarifies that "[a]ll *other* disputes with respect to whether this Mutual Arbitration Provision is unenforceable, unconscionable, applicable, valid, void or voidable shall be determined exclusively by an arbitrator, and not by any court." Id. (emphasis added).

Finally, the ICAs contain a severability clause: "Except as specifically provided in Section XI, if any part of this Agreement is declared unlawful or unenforceable, the remainder of this Agreement shall remain in full force and effect." Doc. Nos. [24-1], p. 7; [24-2], p. 9. Plaintiffs do not contest that the ICAs represent valid and enforceable contracts between the parties—they concede that they "assented to" the contracts themselves. Doc. No. [24], p. 27. Rather, Plaintiffs object to two specific ICA provisions: the arbitration agreement and the class action waiver.

### B. Plaintiffs' Claims

Defendant connects customers, a broad array of restaurants, and independent contractor delivery providers. Doc. No. [26-1], pp. 10–11. When customers place delivery orders on DoorDash's online platform, Dashers receive delivery opportunities on the mobile application. Doc. No. [24], p. 4. After accepting the opportunity, the Dasher drives to the restaurant, picks up the order, and then drives to the customer's location and delivers it. Id. pp. 4–5. Dashers receive "base pay + 100% of tips" from the customers. Id. p. 2. Plaintiffs allege that Defendant has kept "a substantial portion of this additional [tip] charge for itself" at the expense of Dashers. They argue this practice is "equally applicable to the Class Members and constitutes an unfair, unlawful and fraudulent business practice in violation of the law." Id.

## II.    LEGAL STANDARD

The FAA, 9 U.S.C. §§ 1–16 (2006), governs the validity and enforcement of arbitration agreements that touch on interstate commerce, and "embodies a liberal federal policy favoring arbitration agreements." Caley v. Gulfstream Aerospace Corp., 428 F.3d 1359, 1367 (11th Cir. 2005). Most fundamentally, "arbitration is a matter of contract." AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339, (2011) (citation omitted). The Supreme court has held that the

FAA "requires courts 'rigorously' to 'enforce arbitration agreements according to their terms, including terms that specify *with whom* the parties choose to arbitrate their disputes and *the rules* under which that arbitration will be conducted.'" Epic Sys. Corp. v. Lewis, __ U.S. __, 138 S. Ct. 1612, 1621 (2018) (quoting Am. Express Co. v. Italian Colors Rest., 570 U.S. 228, 233 (2013)) (emphasis in original).

"A court compelling arbitration should decide only such issues as are essential to defining the nature of the forum in which a dispute will be decided." Musnick v. King Motor Co. of Ft. Lauderdale, 325 F.3d 1255, 1261 (11th Cir.2003) (quotation marks and citation omitted). If an agreement is governed by the FAA, courts must effectuate the intent of Congress "to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 22 (1983).

## III.   ANALYSIS

### A. Threshold Issues

In determining whether to compel arbitration under the FAA, courts generally look at two threshold issues: (1) whether there is a valid agreement to arbitrate between the parties, and (2) whether the agreement covers the

dispute. Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83–84 (2002). Any doubt related to arbitrability "should be resolved in favor of arbitration." Moses H. Cone, 460 U.S. at 24–25.

### 1. *Valid Arbitration Agreement*

Plaintiffs concede that they "assented to" the ICAs. Doc. No. [24], p. 27. Plaintiffs argue, however, that they were fraudulently induced into agreeing to the arbitration agreement, as they "did not contemplate that the wrongdoing alleged" would be subject to arbitration. Doc. No. [28], p. 6. They argue that the arbitration clause is thus "invalid for fraud." Id. The Court notes, however, that all of Plaintiffs allegations of fraud go to Defendant's alleged underlying conduct—withholding of tips—and not to any facts specific to the arbitration agreement itself. See id. at pp. 6–7.

Generally, the question of "'whether the parties have a valid arbitration agreement at all' is for the court, not the arbitrator, to decide." Terminix Int'l Co., LP v. Palmer Ranch Ltd. P'ship, 432 F.3d 1327, 1331 (11th Cir. 2005) (quoting Green Tree Fin. Corp. v. Bazzle, 539 U.S. 444, 452 (2003) (plurality opinion)). However, when "parties clearly and unmistakably agree[] that the arbitrator should decide whether the arbitration clause is valid," courts must enforce such a broad agreement. Id. at 1332; see also Howsam v. Dean Witter

8

<u>Reynolds, Inc.</u>, 537 U.S. 79, 83 (2002) (holding the "question of arbitrability," is an issue for judicial determination "[u]nless the parties clearly and unmistakably provide otherwise").

Here, the ICA states that, other than the class action waiver, "[a]ll other disputes with respect to whether this Mutual Arbitration Provision is unenforceable, unconscionable, applicable, valid, void or voidable shall be determined exclusively by an arbitrator, and not by any court." Doc. Nos. [24-1], p. 6; [24-2], p. 7. The ICA also states that "[a]ny arbitration shall be governed by the American Arbitration Association Commercial Arbitration Rules ('AAA Rules')," subject to a few exceptions. <u>Id.</u> AAA Rule 8(a), in turn, provides that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." <u>Terminix</u>, 432 F.3d at 1332 (quoting Am. Arbitration Ass'n, Commercial Arbitration Rules).

Though the general rule is that the validity of an arbitration agreement is an issue for the court, in this case, "the parties have contracted around that default rule." <u>Id.</u> at 1333. The Plaintiffs concede that they "assented to" the ICA. "By incorporating the AAA Rules, including Rule 8, into their agreement," and by the express provision in Section XI.3, "the parties clearly and unmistakably

9

agreed that the arbitrator should decide whether the arbitration clause is valid." Id. at 1332. Thus, this issue is reserved to the arbitrator.

### 2. *Applicability to Dispute at Bar*

The ICA states that "[t]his arbitration agreement . . . shall apply to any and all claims arising out of or relating to this agreement," including:

> CONTRACTOR's classification as an independent contractor, CONTRACTOR's provision of Contracted Services to consumers, the *payments received by CONTRACTOR* for providing services to consumers, the termination of this Agreement, and all other aspects of CONTRACTOR's relationship with DOORDASH, past, present or future, whether arising under federal, state or local statutory and/or common law . . . .

Doc. Nos. [24-1], p. 5; [24-2], p. 6 (emphasis added). The agreement could not have been broader. "Any disputes means all disputes, because 'any' means all." Anders v. Hometown Mortg. Servs., Inc., 346 F.3d 1024, 1028 (11th Cir. 2003) (quoting Merritt v. Dillard Paper Co., 120 F.3d 1181, 1186 (11th Cir. 1997)). "And so, of course, does the word 'all' itself." Id. The agreement reaches this dispute because the agreement reaches any and all disputes.

### B. **Applicability of FAA**

The ICA arbitration agreement provision expressly provides that "[t]his arbitration agreement is governed by the Federal Arbitration Act (9 U.S.C. §§

1–16)," which shall apply to "any and all claims arising out of or relating to this agreement." Doc. Nos. [24-1], p. 5; [24-2], p. 6.

Even if the ICA arbitration agreement did not expressly invoke the FAA, however, the FAA applies because the ICAs "affect commerce." See Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 273–74, 281 (1995) (FAA's requirement that an agreement "involve[e] commerce" is "broad and is indeed the functional equivalent of 'affecting'" commerce, "even if the parties did not contemplate an interstate commerce connection"). Defendant has proffered evidence of the national scope and interstate nature of its business. See Doc. No. [26-4] (Aughney Aff.), p. 2, ¶ 4 ("DoorDash's business is conducted throughout the United States and is directly involved in interstate commerce. DoorDash engages in a multistate business, allowing Dashers to accept delivery opportunities in all 50 states.").

Nonetheless, Plaintiffs argue the FAA is inapplicable because they fall within a statutory exemption for interstate transportation workers. However, the ICA expressly addresses this issue. The ICA states that the FAA shall govern the parties' agreement *even if* one party is otherwise exempt from the FAA. Doc. Nos. [24-1], p. 6; [24-2], pp. 6–7. "In the event, but only in the event, the *arbitrator* determines the FAA does not apply, the state law governing

11

arbitration agreements in the state in which the CONTRACTOR operates shall apply." Id. Thus, the parties' agreement reserves the issue of exemption to the arbitrator. Id.

### C. Enforceability of Class Action Waiver

Defendants argue that class action treatment of this dispute is precluded by class action waivers contained in the ICAs. Plaintiffs respond that, because the class action waivers are contained in Section XI, the Mutual Arbitration Provision, a decision about the validity of the class action waivers first requires a conclusion that the arbitration agreements are valid. Doc. No. [28], pp. 29–30. Therefore, they argue, Defendant's class action waiver argument is premature. Id.

The Court has determined *supra* that the validity of the arbitration agreement provision has been reserved by the parties to the arbitrator. However, the ICAs provide: "Notwithstanding any other clause contained in this Agreement or the AAA Rules . . . any claim that all or part of this Class Action Waiver is unenforceable, unconscionable, void or voidable may be determined only by a court of competent jurisdiction and not by an arbitrator." Doc. Nos. [24-1], p. 6; [24-2], pp. 7. Thus, while the validity of the arbitration agreement is one for the arbitrator, the validity of the class action waiver is one

12

for the Court. In order to rule on the enforceability of the class action waiver without infringing on issues reserved to the arbitrator, the Court must first determine whether it is severable from the remainder of the arbitration agreement.

### 1. *Severability*

The ICAs contain severability clauses. Regarding the severability of other provisions from arbitration clauses, the Eleventh Circuit has held the following:

> If all the provisions of the arbitration clause are enforceable, then the court must compel arbitration according to the terms of the agreement. If, however, some or all of its provisions are not enforceable, then the court must determine whether the unenforceable provisions are severable. Severability is decided as a matter of state law. If the offensive terms are severable, then the court must compel arbitration according to the remaining, valid terms of the parties' agreement. The court should deny the motion to compel arbitration only where the invalid terms of the arbitration clause render the entire clause void as a matter of state law.

Terminix, 432 F.3d at 1331 (citing Anders, 346 F.3d at 1032). Whether the severability provision is to be given effect "is a question of state law, because in placing arbitration agreements on an even footing with all other contracts, the FAA makes general state contract law controlling." Anders, 346 F.3d at 1032.

In Georgia, a contract may be either entire or severable. <u>See</u> O.C.G.A. § 13–1–8(a). If a contract is severable, the part of the contract that is valid will not be invalidated by a separate part that is unenforceable. <u>Id.</u> The intent of the parties determines whether a contract is severable. <u>Id.</u> § 13–1–8(b). "[S]everability clauses are enforceable under Georgia law and the FAA requires that arbitration agreements be treated no less favorably than other contracts under state law." <u>Jackson v. Cintas Corp.</u>, 425 F.3d 1313, 1317 (11th Cir. 2005).

Here, Plaintiffs' claims can be arbitrated on an individual basis if the class action waiver is enforceable. However, under a recent Supreme Court decision, <u>Lamps Plus Inc. v. Varela</u>, __ U.S. __, 139 S. Ct. 1407 (2019), parties cannot be compelled to arbitrate on a class-wide basis absent a clear agreement to do so. <u>Id.</u> at 1415 ("Class arbitration is not only markedly different from the 'traditional individualized arbitration' contemplated by the FAA, it also undermines the most important benefits of that familiar form of arbitration. The [FAA] therefore requires more than ambiguity to ensure that the parties actually agreed to arbitrate on a classwide basis.") (internal citation omitted).

Clearly, given the ICA's class action waiver, the parties did not agree to arbitrate claims on a class-wide basis. Thus, if the class action waiver is *not*

enforceable, the parties' claims cannot be arbitrated.[1] The Court must therefore address the enforceability of the class action waiver before Plaintiffs' claims can be sent to arbitration.

### 2. *Class Action Waiver*

The final phrase of the FAA's § 2, known as the "saving clause," "permits agreements to arbitrate to be invalidated by generally applicable [state law] contract defenses, such as fraud, duress, or unconscionability, 'but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue.'" Pendergast v. Sprint Nextel Corp., 691 F.3d, 1224, 1231 (11th Cir. 2012) (quoting Concepcion, 563 U.S. at 339). So long as the class action waiver does not run afoul of these state law defenses, however, the FAA demands that it be enforced. See Conception, 563 U.S. at 347–49 (finding California's Discover Bank rule, which held all arbitration class action waivers were unconscionable, was preempted by Section 2 of the FAA).

---

[1]      The ICA also contemplates this situation: "In any case in which (1) the dispute is filed as a class, collective, or representative action and (2) there is a final judicial determination that all or part of the Arbitration Class Action Waiver is unenforceable, the class, collective and/or representative action to that extent must be litigated in a civil court of competent jurisdiction . . . ." Doc. Nos. [24-1], p. 6; [24-2], pp. 7.

The Eleventh Circuit has held "arbitration agreements precluding class action relief are valid and enforceable." Jenkins, 400 F.3d at 877–78 (citing Randolph v. Green Tree Fin. Corp.-Ala., 244 F.3d 814, 819 (11th Cir. 2001)). However, "the enforceability of a particular class action waiver in an arbitration agreement must be determined on a case-by-case basis, considering the totality of the facts and circumstances." Dale v. Comcast Corp., 498 F.3d 1216, 1224 (11th Cir. 2007).

> Relevant circumstances may include, but are not limited to, the fairness of the provisions, the cost to an individual plaintiff of vindicating the claim when compared to the plaintiff's potential recovery, the ability to recover attorneys' fees and other costs and thus obtain legal representation to prosecute the underlying claim, the practical affect the waiver will have on a company's ability to engage in unchecked market behavior, and related public policy concerns.

Id. Georgia law directs the Court to assess similar factors, including "procedural and substantive elements." Jenkins v. First Am. Cash Advance of Ga., LLC, 400 F.3d 868, 875 (11th Cir. 2005).[2]

---

[2] "Factors relevant to the procedural unconscionability inquiry include the bargaining power of the parties, the conspicuousness and comprehensibility of the contract language, the oppressiveness of the terms, and the presence or absence of a meaningful choice. As for substantive unconscionability, courts consider the commercial reasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and similar public policy concerns." Jenkins, 400 F.3d at 875–76 (internal quotation marks and citations omitted).

Plaintiffs argue only that the class action waiver is "embedded" in the arbitration agreement, which they say was procured fraudulently. Doc. No. [28], p. 30. However, Plaintiffs have made no argument that their agreement to the ICA generally, or the class action waiver specifically, was obtained by procedurally objectional means. Defendants argue that the class action waivers are valid and must be enforced. Doc. No. [26-1], pp. 30–31.

Plaintiffs do not dispute that they read and assented to the terms of the ICA. The terms of the class action waiver provision are clearly and comprehensibly written. The class action waiver provision was entitled "Class Action Waiver," which was underlined. Plaintiffs entered the ICA as independent contractors and have made no argument that they lacked a meaningful choice in entering the agreement. The ICAs also provided a mechanism to opt-out of the arbitration agreement (including the class action waiver) entirely. Thus, there is no evidence that the agreement was procedurally unconscionable.

The ICA provides governing procedures for the arbitration. It provides that "the Arbitrator may award all remedies to which a party is entitled under applicable law and which would otherwise be available in a court of law . . . ." Doc. Nos. [24-1], p. 6; [24-2], pp. 7. The Arbitrator "may issue orders (including

subpoenas to third parties) allowing the parties to conduct discovery sufficient to allow each party to prepare that party's claims and/or defenses"; may hear motions to dismiss and/or motions for summary judgment and will apply the standards of the Federal Rules of Civil Procedure governing such motions"; and shall articulate his or her findings "in writing with findings of fact and conclusions of law." Id. Defendant is obligated to pay "all of the Arbitrator's fees and costs." Id. There is no bar to Plaintiffs' ability to seek attorneys' fees and other costs. Thus, the terms are not substantively unfair to Plaintiffs.

In Dale, the Eleventh Circuit invalidated a class action waiver because "cost of vindicating an individual [plaintiff's] claim, when compared to his or her potential recovery, is too great." 498, F.3d at 1224. This was because (1) the named plaintiffs had only been charged $10.56 in allegedly excess fees, and (2) the plaintiffs were unable to recover attorneys' fees. Id. Conversely, in Jenkins, the Eleventh Circuit enforced a class action waiver where attorneys' fees were available, finding "[t]he Arbitration Agreements permit [the plaintiff] and other consumers to vindicate all of their substantive rights in arbitration." 400 F.3d at 878.

The Court finds that enforcing the class action waiver will "not have the practical effect of immunizing" Defendant from claims for unlawful market

behavior. Id. First, the ICAs allow Dashers to opt-out of the arbitration agreement provision—including the class action waiver. Second, Plaintiffs have not alleged that the value of their claims makes arbitrating individually prohibitively expensive. Finally, Plaintiffs are expressly entitled to "all remedies to which a party is entitled under applicable law and which would otherwise be available" in this Court. Doc. Nos. [24-1], p. 6; [24-2], pp. 7. Though attorneys' fees are not generally allowable in breach of contract actions in Georgia, they may be allowed where a plaintiff demands them in the prayer for relief and alleges the Defendant has acted in bad faith, as Plaintiffs have done here. See O.C.G.A. § 13-6-11; Doc. No. [24], pp. 27–28.

Because it does not run afoul of general contract principles, the Court holds the class action waiver is enforceable. Because the class action waiver is enforceable, Plaintiffs' claims can be individually arbitrated. As mentioned *supra* and per the parties' intent, the arbitrator has the authority to rule on his or her own jurisdiction, including the validity of the arbitration agreement.

## IV.   CONCLUSION

In light of the federal policy in favor of enforcing arbitration agreements as written, Defendant's Motion to Compel Arbitration (Doc. No. [26]) is **GRANTED**. It is hereby **ORDERED** that the case is stayed pending

Arbitration. **IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of the case for the limited purpose of enforcing any binding arbitration award.

In light of the stay and pursuant to the Court's inherent authority to manage its docket, it is therefore **ORDERED** that this action be **ADMINISTRATIVELY TERMINATED** during the pendency of the stay. The parties may file a motion to reopen the case at the conclusion of arbitration.

**IT IS SO ORDERED** this _8th_ day of January, 2020.

                                    _____

**HONORABLE STEVE C. JONES**
**UNITED STATES DISTRICT JUDGE**

20